ANDREW W. COMSTOCK ET AL. *v.* JOSEPH E. NORTH.

[41 South. Rep., 374.]

1. VENDORS AND VENDEES.  *Purchasers.  Options.  Offers.  Revocation.*

    A letter written by the owner of land, suggesting that the addressee should examine it to learn its value, saying that he would withdraw it from market for a designated time, and if at the expiration of that time the addressee wished to purchase at a designated price per acre he could do so, is not an option, but a mere offer to sell, revocable at the writers pleasure before acceptance by the addressee.

2. SAME.  *Consideration.  Nudum pactum.*

    Option contracts for the sale of land, like other contracts, must be supported by a consideration.

3. SAME.  *Expenses on faith of mere offer.*

    Expenses incurred in examining land to ascertain its value and a communication of the result to the owner is not a consideration for his mere unaccepted offer to sell at a designated price.

4. SAME.  *Pleadings.*

    Where the rights of a party to a suit is predicated of a writing, the court will be governed by its essential character, and not by its improper designation in the pleadings.

FROM the chancery court of Harrison county.

HON. J. O. S. SANDERS, Special Chancellor.

Comstock and another, partners under the name Comstock Brothers, the appellants, were the complainants in the court below; North, the appellee, was defendant there.

The object of the suit was to cancel, as a cloud upon title, a writing, in form of a letter, written by complainants to defendant, under which the defendant asserted a right in and to a large tract of valuable land and to confirm the complainants' title thereto. The defendant made his answer a cross-bill, and sought to have the letter adjudged to be an irrevocable option for the sale of the land by complainants to defendant and for its specific performance. The original bill was dismissed by complainants, but the suit was ordered to and did proceed upon the cross-bill to which the complainants demurred. From a decree in defendant's favor, overruling the demurrer to the cross-bill, the complainants appealed to the supreme court.

The letter is given and the facts are stated in the opinion of the court.

*E. J. Bowers; James H. Neville; Virgil A. Griffith,* and *Shivers & Shivers,* for appellants.

The letter, written by one partner, is not binding on the firm; but if binding it is void for uncertainty and is so unfair that a court of equity will not decree its specific performance.

The letter, the basis of the cross-bill, had no binding force except so long as the complainants saw fit to observe it. It was without consideration and utterly lacking in mutuality. It goes no further than to say that if at any time prior to February 1, 1904, North desired to take the lands they would sell "eight-ninths at the rate of twenty dollars per acre," and that in the meantime he might look the lands over with a view of determining whether he desired to purchase. There is absolutely no agreement on North's part to do anything, at least no agreement in writing. He was not bound to look over the lands or to accept

the offer. It was a privilege that he had, and that he might exercise if he saw fit. He undertook no responsibility or obligation, and there was no consideration of any character moving toward the Comstocks. Such a paper can not in any proper or legal sense be styled an option. It is at most a continuing offer which the makers had a right to withdraw whenever they saw fit, and that without reference to whatever expense or trouble may have been incurred by the party to whom the offer was made. A contract in order to bind one party must bind both, and the failure or omission to bind North made it competent for Comstock to withdraw whenever he saw fit. It is a unilateral contract, which being incapable of enforcement against North, cannot be enforced against the other party. We have been at some pains to collate the authorities on this question, which are as follows:

A promise is not a good consideration for a promise unless there is absolute mutuality of engagement, so that each party has the right at once to hold the other to a positive engagement. *Styles* v. *McClelland,* 6 Col., 89; *Bailey* v. *Austrian,* 19 Minn., 535; *Townsend* v. *Fisher,* 2 Hilt. (N. Y.), 47.

Mutual promises must be concurrent and obligatory on both parties at the same time. *Livingston* v. *Rogers,* 1 Caines (N. Y.), 538; *Keep* v. *Goodrich,* 12 Johnson (N. Y.), 397; *M. & B. Plank Road Co.* v. *Snediker,* 18 Barbour (N. Y.), 317; *Slee* v. *Bloom,* 10 Am. Dec., 273; *Stewart* v. *Hamilton College,* 2 Denio (N. Y.), 403. See, especially, *Bierber* v. *Beck,* 6 Pa. St., 198. See *Devey* v. *Lumberman Mining Co.,* 93 Mich., 491; *Mers* v. *Frank. Ins. Co.,* 68 Mo., 127.

An offer to sell at a fixed price, whether accompanied with an agency to sell to others òr not, may be revoked at any time prior to the acceptance of the offer, unless there is an express agreement on good consideration to accept within a limited time, or when other acts are done by which the person making the offer consents to be bound. *Stitt* v. *Huidekoper,* 84 U. S. (17 Wall.), 384 (21 L. ed., 644).

This case is directly in point.    Where an offer is made by letter or messenger it may be revoked at any time before the offer is received by the one to whom the offer is made.    Revocation, in law, is made when it is received, and has no legal existence before.    *The Palo Alto Fed. Case No.* 10,700 (2 Ware, 344; Dav., 343).

The assent of the minds of both parties is necessary to constitute a contract, and if one makes a proposition, he may recall it at any time before its acceptance.    *Stanford* v. *Howard,* 29 Ala., 684.

A written proposition for the sale of land, without consideration, and not under seal, wherein the time of acceptance is limited, may be withdrawn by the party making it at any time before its acceptance.    *Laimon* v. *Jordan,* 56 Ill., 204.

Although an offer designates a time within which it may be accepted, the party making it may withdraw it within the time and before its acceptance.    *School Directors* v. *Trefthren,* 10 Ill. App. (10 Bradw., 127).

Where an acceptance of a contract is to be made by mail, the proposer may withdraw his offer at any time before the posting of a letter accepting it.    *Gregg* v. *Wooliscroft,* 52 Ill. App., 214.

The offer of a reward for the performance of a certain service is until performance a mere proposal, and not a contract, and may be revoked at pleasure.    *Harson* v. *Pike,* 16 Ind., 140.

A mere proposal to sell may be revoked at any time before acceptance.    *Miller* v. *Douville,* 45 La. Ann., 214 (12 South. Rep., 132).

Plaintiff placed a contract of sale of land with defendant's agent, with a parol condition that, if he was not notified within a certain time of its acceptance, it should be void.    Notice was not given in the time named, and plaintiff gave notice that he withdrew the offer made by thus placing the contract.    Held that the contract of sale was not binding on plaintiff.    *Stevens* v. *Buffalo & N. Y. C. R. R. Co.,* 20 Barb. (N. Y.), 332.

Where an offer to carry freight for a certain rate is withdrawn before acceptance an amount paid in excess of that cannot be recovered as for breach of contract.    *Bouker* v. *Long Island R. R. Co.,* 89 Hun., 132 (35 N. Y. Supp., 30).

M. offered to sell land to the city of New York at a price named, and then formally withdrew his offer.    Subsequently the city council authorized the comptroller to purchase the land and pay in city bonds.    Then M. tendered a deed and demanded payment according to the price named in his offer.    Held, that the city had not bought nor agreed to buy, and was not liable for the price.    *McCotter* v. *City of New York,* 35 Barb., 609.

An option of a contract for the sale of oil without consideration paid, may be withdrawn at any time before acceptance. *Bosshardt & Wilson Co.* v. *Crescent Oil Co.,* 1 Pa. St., 109. See also 32 Ala., 1120.

And to the same effect, see *Houghwont* v. *Boisaubin,* 18 N. J. Eq., 315; *Weiden* v. *Woodruff,* 38 Mich., 130; *Lincoln* v. *Gay,* 164 Mass., 537; *Craig* v. *Harper,* 57 Mass., 158; *Isham* v. *Therasson,* 53 N. J. Eq., 10; *Quick* v. *Wheeler,* 78 N. Y., 300; *Ft. Edward* v. *Fish,* 86 Hun. (N. Y.), 548; *Sprague* v. *Train,* 134 Vt., 150; *Johnson* v. *Filkinton,* 139 Wis., 62; *Miller* v. *Douville,* 45 La. Ann., 214 (12 South. Rep., 132).

"Undoubtedly if the offerer gives a day for acceptance, without consideration for the delay, he may at any time within that day, before aceptance, recall his offer.    So he may if he gives no time.    If he makes an offer, and instantly recalls it before acceptance, although the other party was prepared to accept it the next instant, the offer is effectually withdrawn.    .    .    . It may be said that whether the offer be made for a time certain or not, the intention or understanding of the parties is to govern. If the proposer fixes a time he expresses his intention, and the other party knows precisely what it is.    If no definite time is stated, then the inquiry as to a reasonable time resolves itself into an inquiry as to what time it is rational to suppose that the

parties contemplated; and the law will decide this to be that time which as rational men they ought to have understood each other to have in mind." 1 Parsons on Contracts, 482.

Our own case of *Kolb* v. *Land Co.*, 74-Miss., 567, is directly in point. In that case Mr. Kolb signed and delivered a written authorization to the land company to sell his land at a given price, agreeing to give them ten per cent commission, providing also they should have the exclusive agency to sell the lands for a given time, and should have a commission without reference to who effected the sale, the contract to exist till January 1, 1896. Before that date, and without notice to the land company, Kolb sold his property and the land company sued him for the ten per cent commission. The company had taken steps to obtain purchasers; had advertised; had taken purchasers to see the property, and had otherwise incurred expenditures on the faith of the writing. The whole question is elaborately considered and examined in that case and such contracts pronounced void.

To the same effect see *Federal Oil Co.* v. *Western Oil Co.*, 112 Fed. Rep., 393; *Marble Co.* v. *Reiple,* 10 Wall., 339-359 (19 L. ed., 95). *Stitts* v. *Huidekoper,* 84 U. S. (17 Wall.), 384 (21 L. ed., 644), is also on all fours with the instant cause.

The attempt is made in this case to save this letter from the rule above declared by an allegation of a parol consideration, independent of the letter, and prior thereto. On that point the bill is as follows:

"It was therefore agreed between this cross-complainant and the said defendant that this cross-complainant should at his own expense cause such investigation to be made, and in consideration thereof that the said cross-complainant should have the use of the option to purchase said realty at any time up to the first day of February, A. D. 1904.

"That thereafter the said defendants herein, under the name

and style of Comstock Brothers, entered into a certain written undertaking upon the consideration aforesaid, and," etc.

We insist that an agreement by a man that he will look at and examine a tract of land with a view of ascertaining whether he desired to buy it, is not a good consideration for a promise that ties up the land for a great space of time, and gives to him the exclusive right to buy. But be that as it may, it is not such a consideration or such a contract as will authorize or justify the specific enforcement of the offer to sell, by a court of equity. Assuming for the sake of illustration that in the agreement by which the offer was made, North had bound himself to examine the land and to advise Comstock, prior to February 1, 1904, of his conclusion in the premises, it is manifest that such an agreement could never have been specifically enforced in a court of chancery. The remedy of the defendants, if indeed any they had, would have been an action for damages for the loss sustained by them in tying up the lands during the period mentioned. That mutuality which must exist in all contracts to justify a decree for their specific performance is lacking in this case.

"The rule is fundamental that a contract will not be specifically enforced unless it is obligatory on both parties, *unless both parties at the time of its execution have the right to resort to equity for its specific performance.*" . . .

"And where a contract when executed is not specifically enforceable against one of the parties, it cannot by subsequent performance of those conditions that could not be specifically enforced, put himself in a position to demand specific enforcement by the other party." *Norris* v. *Fox,* 45 Fed. Rep., 406; 8 De Gex, M to G, 731–736; Fry on Specific Performance (3d ed.), Am. Notes, sec. 443.

"Assuming that the contract has been concluded, and that it belongs to a class capable of being enforced, it must still possess certain essential elements and incidents in order that a court

of equity may exercise the jurisdiction to compel its perform-
ance. . . . It must be, in general, mutual in its obligation
*and in its remedy.* . . . The elements which peculiarly
effect the *equitable* character of the agreements and of the reme-
dies are the following: The contract must be perfectly fair,
equal and just in its terms and in its circumstances. The con-
tract and the situation of the parties must be such that the
remedy of specific performance will not be harsh or oppressive."
3d Pomeroy's Equity Jurisprudence, sec. 1405, and note.

"It is always within the discretion of the court of chancery
to decline to enforce a contract specifically, where substantial
justice and equity do not require that it should be done. Specific
performance cannot be said to be an absolute right. It is a
remedy which is admitted as good by a court of equity in its
discretion, and *in such cases only where the legal remedy is
inadequate or impracticable, and only when it can by that
means and amount perform and compel justice.*" 3d Pomeroy,
sec. 1401.

"A fundamental and necessary condition precedent to a de-
cree for specific performance is that the complainant not only
must do or offer to do equity, but that he must have, prior to
the filing of his bill, sacramentally complied with all other
provisions of the contract relating to himself, and have done
all the things which are required of him as a condition to, or
consideration for the agreement." 3d Pomeroy, sec. 1407.

In this case the complainant is forever cut off from any spe-
cific performance of the contract, if for no other reason, because
of his failure to avail himself of the option or to accept its terms
*within the time limited, and within the life of the option.*

*Ford & White,* for appellee.

It is insisted, among other defenses, that the so-called letter,
as denominated by appellant, of October 31, 1902, by Com-
stock Brothers to J. E. North, and option, as we construe it, was
without consideration, and was therefore revocable at any time

by Comstock Brothers under authority of *Bennett* v. *Land Co.*, 74 Miss., 567, and *Stigler* v. *Jaap,* 83 Miss., 351. The allegations of this cross-bill take the present case entirely out of the class of cases to which the above belong. In neither of these cases was there any actual payment in money of a consideration sufficient to support the contract; nor did either party, so far as the records show, relying upon the other carrying out its terms, suffer any damage or injury in contemplation of a performance of the agreement. It is not at all necessary, as we understand the rule, that any direct benefit should accrue to both parties to an agreement in order to raise a sufficient consideration to support it, but that any damage or injury sustained by one party to the agreement in an attempted performance of it will make it valid and binding as to the other.

Any benefit to the promisor, however small, and any inconvenience or loss to the promisee, is a sufficient consideration to uphold a contract. *Byrne* v. *Cummings,* 41 Miss., 192; *Nagle* v. *Catchings,* 4 G., 672; *Lindsey* v. *Sellers,* 4 Cush., 119; *Whitworth* v. *Harris,* 40 Miss., 483.

Any damage or suspension of right, or liability to a loss occasioned to one by the promise of another, is a sufficient consideration for such promise, and will make it binding, though no actual benefit accrues to the promisor. *Mascolo* v. *Montesanto,* 61 Conn., 50 (29 Am. State Rep., 170).

We insist that this cross-bill shows both a consideration moving to Comstock Brothers under this agreement, and also a most serious damage to North. It is alleged that this land, extending over, as the court judicially knows, many square miles of territory, contained a large but unknown quantity of timber, and that to acquire the necessary information in reference to this timber, that it required the work for a long time of men specially skilled in the lumber traffic; that North, relying upon this option, expended over five thousand dollars in gathering this information, which he communicated to Comstock Brothers.

And that after acquiring this information *at North's expense,* they began to proclaim he had no option and filed the suits to impede him, etc.   Not only did North incur this expense, under the belief that he had an option and that the other party would live up to the agreement, but the language of the agreement itself provided for incurring this identical expense:

"We will withdraw our Mississippi tract of land in Harrison and Pearl River counties from the market until January 1, 1904, *during which time you may send your men to look it over.*"

Appellee has not only suffered a loss and damage, but in incurring the loss, was doing the very thing that both parties contemplated should be done when the contract was entered into. So we insist that there was a real and substantial consideration inuring to Comstock Brothers under this contract, long before they began their fraudulent tactics to impede and prevent North from performing his part of the contract, and moreover that North, relying upon the language of the agreement itself, had *"sent his men to look it over."*   And aside from the allegation of the expense incurred, it is a matter of common knowledge that men cost money, and therefore this agreement cannot be disregarded upon any such airy notions as the want of a consideration.

Appellants plant themselves upon the proposition that the agreement of Comstock to convey this land was only binding on them so long as they saw fit to observe it, and that they had a right at any time to revoke it.   We beg to take issue on this proposition, and insist that whatever might have been Comstock Brothers' right to revoke the contract at its inception, that when they were advised by North that he had put his men looking over the land, pursuant to the terms of the contract, and in accordance with its very language, as contemplated at the time, that the contract became valid and binding, and that they could not thereafter, without North's consent, revoke it.   The

principle announced in *Stitt* v. *Huidekoper,* 84 U. S. (17 Wall.), 384 (21 L. ed., 644), and all the authorities cited by counsel on the question as to the right of a party to withdraw, or revoke an offer of sale, each and all rest upon the fundamental proposition that no consideration existed to support the contract, either *at the time of its inception, or at the time of the revocation.*

The controlling feature in the case of *Kobb* v. *Land Company,* 74 M., 567, and the one on which relief was denied the land company, was the *want of consideration.*

A written agreement to convey land at the option of the proposed vendee within a given time, and at a certain price, if made upon a sufficient consideration, with full knowledge upon the part of the person extending the option, that he is bound and that the other party is not, is such a contract as, though lacking in mutuality of remedy, will be enforced in equity at the instance of the vendee. When the party holding the option signifies his acceptance within the time limited, and upon the terms stated, the obligation of the contract becomes mutual and capable of enforcement at the instance of either party. *Johnson* v. *Trippe,* 33 Fed. Rep., 530.

The contract may be of such a nature as to give a right to the one party which it does not give to the other; as, for instance, where a lessor covenants to renew upon request of his lessee, or where the agreement is in the nature of an undertaking. But the more accurate view of such cases as the first —perhaps of all that could be treated as wanting mutuality— seems to be that they are conditional contracts, and when the condition has been made absolute, as, for instance, in the case above stated, by a request to renew, they would seem to be mutual and capable of enforcement by either party alike. Fry on Specific Performance, sec. 291; Waterman on Specific Performance, sec. 200; *Fowle* v. *Freeman,* 9 Ver., 351; *Clason* v. *Bailey,* 14 Johns., 484; *Vandoven* v. *Robinson,* 16 N. J.

Eq., 256; *Howralty* v. *Warren,* 18 N. J. Eq., 124; *Smith's Appeal,* 69 P. St., 474; *Rogers* v. *Sanders,* 16 Me., 92; *Vassault* v. *Edwards,* 43 Cal., 453; *Schroder* v. *Gememider,* 10 Nev., 355.

The purchaser of a contract to buy or sell land pays for the privilege of his election. *It is that very privilege which the other party to the contract sells.* The very purpose of an optional contract of this character is to extinguish this mutuality of right and vest in one of the parties the privilege of determining whether the contract shall be vitalized and enforced. An option to buy or sell land, more than any other form of contract, contemplates a specific performance of its terms, and it is the right to have them specifically enforced that imparts to them their usefulness and value. *Watts* v. *Kellar,* 56 Fed. Rep., 1, citing Pom. Cont., secs. 167-169; *Willard* v. *Taylor,* 8 Wall., 557; *Brown* v. *Slee,* 103 U. S., 828.

Argued orally by *E. J. Bowers,* for appellants, and by *J. I. Ford,* for appellee.

Mayes, J., delivered the opinion of the court.

On the 31st day of October, 1902, Comstock Brothers wrote to J. E. North as follows:

"Cincinnati, Ohio, Oct. 31, 1902.

"Mr. J. E. North, Bond, Miss.

"*Dear Sir:*—We will withdraw our Mississippi tract in Harrison and Pearl River counties from the market until January 1, 1904, during which time you may send your men to look it over, and if, at the expiration of the time, or February 1, 1904, you decide to take this land, we will sell you eight-ninths and give you warranty deed on the same at the rate of $20 per acre, and in the meantime we will try to get the consent of the parties owning the other one-ninth at the same price, but will not guarantee their consent.      "Yours truly,

"Comstock Bros."

On the 10th day of April, 1903, Comstock Bros. filed their bill in the chancery court of Harrison county, the allegations of which, briefly stated, are that they are the owners of an eight-ninths interest in a large body of land situated in Harrison county, state of Mississippi, and describing the said property by metes and bounds, setting forth their deraignment of title. The bill states that upon receipt of the letter by North, he had same recorded with the chancery clerk of Harrison county, claiming it to be an option on the land described in the bill, and prayed for a cancellation of the said letter as a cloud upon their title, and that the same be declared null and void. The defendant, North, answered the bill, and claimed that the above letter gave him a valid and binding option for the purchase of said land up to February 1, 1904, and claimed that, acting under said option, he had expended a large sum of money in causing the land to be looked over and examined, and is still doing so, and is willing, able, and ready to carry out his part of the contract as contained in the letter set out above.

On the 1st day of February, 1904, the defendant North asked and obtained leave of the court to file a cross-bill. The substantial allegations of the cross-bill are that North, after receipt of above letter, expended a large sum of money in making the examination and investigation of the land of Comstock Bros. lying in Harrison county, and said letter gave to defendant North a binding option on said land until February 1, 1904. The cross-bill then states: "It was agreed between this cross-complainant and said defendant that cross-complainant should, at his own expense, cause examination and investigation to be made of the land, and in consideration thereof cross-complainant should have the right or option to purchase said realty at any time up to the 1st day of February, 1904, at the rate of $20 per acre." Acting upon this, and at his own expense, North expended a large sum of money, something in excess of $5,000. The cross-bill then concludes with the prayer for an accounting,

under the direction of the court, for the purpose of ascertaining the amount required to be paid by North for the land as the purchase money, and stated that when this is ascertained North is ready to pay. The cross-bill also prays that upon the payment of the amount that the court shall ascertain to be due, Comstock Bros. be required to execute to North a deed to the land described in the bill. The cross-bill does not allege that there had ever been, at any time, any acceptance of the proposal made by Comstock Bros., and seems to rely for this upon the fact that North went to great expense in examining the land. The money is not paid into court, and no tender of it is made, other than the willingness expressed by North to pay same when the court shall ascertain the amount due.

On the 2d day of February, 1904, Comstock Bros. asked leave to dismiss their original bill, which was granted by the court, and a decree entered on the 4th day of February, 1904, allowing Comstock Bros. "to withdraw their original bill, without prejudice to the right of defendant to proceed under his cross-bill, and. to obtain thereby such affirmative relief independent of the original bill as the cross-bill might entitle him to." Comstock Bros., after filing answer denying all allegations of fraud made in cross-bill, demurred to the cross-bill of North, setting up ten different grounds of demurrer.

We only notice the second ground, which is: "Because the written contract, or option, relied upon in said cross-bill, is void on its face, for uncertainty and want of description of any lands, and for want of consideration."

The letter written by Comstock Bros. to the defendant is nothing but a mere offer to sell to North the land in question, having no consideration to uphold it, and therefore revocable at the pleasure of Comstock Bros. before acceptance by North. The allegations of the bill do not show any acceptance on the part of North, or state facts which would constitute an acceptance on his part. All contracts for options must be supported

by a sufficient consideration, which is utterly wanting in this case. It is true that Comstock Bros., in writing to North, say: "You may send your men to look it over, and if, at the expiration of the time, or February 1, 1904, you decide to take this land, we will sell you eight-ninths interest and give you warranty deed," etc. North alleges in his cross-bill that, acting upon this clause of the letter, he sent men and expended large sums of money in obtaining information in reference to the land, which he communicated to Comstock Bros. and which they are attempting to use for their own benefit. Where an option is conditioned upon the performance of certain acts, the performance of the acts may constitute a consideration to uphold the contract for option; but there is no such condition imposed by this letter, and, if it be true that North has communicated to Comstock Bros. the information gathered by him in making the investigation, it was a purely voluntary act of his, not contemplated or stipulated for by the terms of the letter, and therefore imposing no obligation on Comstock Bros. not stipulated for or mentioned in the letter of proposal. All the expense in examining the land incurred by North was incurred on his own account, for the purpose of informing himself as to whether or not it would be desirable for him to make the purchase, and was not in any way intended to benefit Comstock Bros. so far as is shown by the letter; nor was it incurred in their behalf, nor did it create any consideration for the option. It is true that in the original bill of Comstock Bros. they refer to this letter as an option; but it lacks the essential quality to make it such, and the character of its obligation cannot be changed by a loose reference to it in any pleading as an option, thereby giving it a consideration which would uphold it when a consideration is utterly wanting. The base of the rights of both parties is found in this letter, and is utterly insufficient to uphold a decree for specific performance. *Kolb* v. *Bennett Land Co.,* 74 Miss., 567 (21 South. Rep., 233);

*Stitt* v. *Huidekoper,* 84 U. S., 384 (21 L. ed., 644); *Miller* v. *Douville & Gallagher,* 45 La. Ann. Code, 214 (12 South. Rep., 132); *School Directors* v. *Trefethren,* 10 Ill. App., 127; *Larmon* v. *Jordan,* 56 Ill., 204; 21 Ency. of Law (2d ed.), 926, and authorities cited under head of "Consideration;" Page on Contracts, sec. 305.

 *Let the decree be reversed, and the cross-bill dismissed.*