Argued May 24; reversed September 13, 1949

# SMALL *v.* PAULSON
### 209 P. 2d 779

*S. J. Bischoff,* of Portland, argued the cause and filed a brief for respondent.

*Harry G. Hoy* argued the cause for appellant. On the brief were Hoy & Prag, of Portland.

Before LUSK, Chief Justice, and BRAND, ROSSMAN, BAILEY and HAY, Justices.

## LUSK, C. J.

This is an appeal from a judgment based on the verdict of a jury in favor of the plaintiff suing to recover a commission for services rendered in connection with the sale of timber owned by the defendant.

Plaintiff had no written contract of employment. He alleged in his complaint that he was employed by by the defendant "only to find and introduce a purchaser", that he "was not to negotiate any sale of said timber and that defendant would carry on and conduct

all negotiations involved therein", and that defendant agreed to pay him a commission of five per cent on the sale price of the timber if the plaintiff should introduce to the defendant a purchaser to whom sale of the timber should be made. The evidence on behalf of the plaintiff tended to support these allegations.

By a motion for a directed verdict, the denial of which is assigned as error, the defendant raised two questions: First, whether the plaintiff's contract was required to be in writing as provided by § 2-909, O. C. L. A. (8); and, second, whether there is any evidence that plaintiff performed the services for which he was employed, that is, whether he found and introduced to the defendant a purchaser of the timber. In the view we take of the case we may assume that the contract alleged and proved, although oral, was valid and enforceable and confine our discussion to the second of the above questions.

Plaintiff does not assert that he introduced anyone to the defendant who in fact bought the timber. He alleged in his complaint that he introduced to the defendant one John M. Bogle and that "on or about April 2, 1946, defendant and the said John M. Bogle entered into a contract by the terms of which defendant granted to the said John M. Bogle an irrevocable option to purchase the said timber at the price of $84,000.00 for a period of thirty (30) days; that prior to the expiration of said option the said John M. Bogle assigned the said option to the Ralph L. Smith Lumber Company with the knowledge, approval and consent of the defendant and extended the time for the exercise of said option; that thereafter the Ralph L. Smith Lumber Company exercised the said option to purchase the said timber within the time provided for in said option agreement and defendant and the said Ralph

L. Smith Lumber Company entered into an agreement by the terms of which the defendant agreed to sell and the said Ralph L. Smith Lumber Company agreed to purchase the aforesaid timber for the total price of $84,000.00''. The complaint then alleged payment of the full purchase price of $84,000.00 by the Ralph L. Smith Lumber Company. The court instructed the jury that for an option to be valid it must be supported by a valuable consideration, and, further (in accordance with a request by the plaintiff) that if the defendant gave Bogle an option to purchase the timber and Bogle assigned the option to the Ralph L. Smith Lumber Company, which purchased the timber from the defendant, ''then in legal contemplation so far as this case is concerned it is just as though the option was exercised by John M. Bogle himself and the timber was sold by defendant to John M. Bogle.'' Thus, the case turns on whether the defendant granted to Bogle an enforceable option for the purchase of the timber. If no such option was given then Bogle had nothing to assign and on no theory could he be considered a purchaser. To determine this question it is necessary to examine the evidence relating to the dealings between Paulson, Bogle and the Ralph L. Smith Lumber Company.

Bogle, as a witness for the plaintiff, testified to three conversations with Paulson in which the matter of an option was discussed. The first was in Small's office in Portland about March 15, 1946, when Small introduced Bogle to Paulson as a prospective purchaser. Paulson then told him that he had given a man named Stevenson an option which would expire on April 1, and that if Stevenson did not exercise his option ''he would give me an option on the timber or give me a chance to look at it.'' Bogle said he would

have to have an option for thirty days "to cruise the timber and make an investigation of the timber", and Paulson answered that this was agreeable to him provided Stevenson failed to exercise his option. About March 25, in Paulson's home, Paulson told Bogle that Stevenson's time was nearly up and he did not expect him to exercise his option. He showed Bogle his maps and plats and told him about the timber in general. He said that the price was four and a half a thousand. Bogle again said that he would have to have an option for thirty days to investigate and cruise the timber, and Paulson said that this was agreeable if Stevenson's option should expire. On April 2 Paulson met Bogle at Burns, Oregon, (in the vicinity of which the timber is located) and together they went out to the timber. On that occasion, according to Bogle, "He (Paulson) said this same agreement that we had talked over was still good; that the timber would be four and a half a thousand; I would have a 30-day exclusive option in which to cruise and investigate the timber." When Paulson showed Bogle the timber Paulson said, "That deal holds good the way we have it there. You will have to pay four and a half and you will have 30 days to cruise the timber and investigate."

The plaintiff Small testified that Paulson told him on April 6, after his return from Burns, "He (Bogle) looked at it and I gave him a 30-day exclusive option to cruise and take measurements and run the lines and all that." Paulson further said on that occasion, according to Small's testimony, "I think he will give me the four and a half * * * that will be $94,000."

Paulson denied that he gave Bogle an option. He testified that at the meeting in Paulson's house "I told him that 'When you get your cruisers in the field then we can talk about option, but not before,' because I

wouldn't want to tie it up to nobody unless they meant business." And, again, that when the Stevenson option should expire he would give Bogle an option "when he got ready to put his cruisers in there so that he—they would cruise the timber and not tie it up." Paulson testified to a similar statement made by him when he and Bogle went to look at the timber. "When he put his cruisers in there, then I would give him time to look at it."

The undisputed evidence is that the Paulson timber comprised approximately 21,000,000 feet. At four and a half a thousand, the price at which Paulson offered the timber to Bogle, the total purchase price would be $94,500.00.

After the meeting between Bogle and Paulson on April 2 Bogle commenced his investigation of the timber. His testimony about this and about his dealings with the Ralph L. Smith Lumber Company is as follows:

"I went right to work investigating the timber. Mr. Paulson had given me this plat showing his cruise and a description, and I investigated each tract separately and gave it a rough preliminary cruise to know whether it would justify a cruiser or not."

He testified that it took him about ten days or two weeks to make this preliminary survey and that in the meantime he had written Mr. Carpenter, of the Ralph L. Smith Lumber Company, and that Carpenter came to see him about April 23 or 24, and that as a result he sold his option to the Ralph L. Smith Lumber Company for $10,000.00. He then telephoned Paulson, who came to Burns on the evening of April 27. He told Paulson of his deal with the Ralph L. Smith Lumber Company and made an appointment for Paulson to

meet with the officials of the lumber company on the following day. In his conversation with Paulson he informed the latter that the Ralph L. Smith Lumber Company was willing to buy the timber but that the price was too high, and he testified that the next morning Paulson told them that he would sell the timber for $84,000.00. After that, as Bogle's option would expire in two or three days and the representative of the Ralph L. Smith Lumber Company said that they needed more time to complete the cruise, Paulson agreed to give them an additional twelve days.

On cross-examination Bogle admitted that the first time that the price of $84,000.00 was mentioned was when Paulson told the Ralph L. Smith Lumber Company that he would take $84,000.00 for the timber. He said that he had told Paulson the night before that unless this was done they could not make the deal; that he had completed the sale of the option to the Ralph L. Smith Lumber Company on April 24 or 25, but had not told them what they had to pay for their timber. "I told them I would negotiate with Mr. Paulson." He further testified:

"Q And they bought your option on that kind of arrangement for $10,000?

"A If they could complete the deal with Paulson.

"Q Their purchase was conditional?

"A Yes, that is right; everything had to be agreeable or we couldn't do it."

It was shown without contradiction that the Ralph L. Smith Lumber Company bought the timber and paid Paulson $84,000.00 for it.

The plaintiff contends, first, that there was a consideration for the option consisting of the detriment sustained by Bogle in cruising the timber; second, that

it is immaterial whether there was a consideration or not because the option was actually exercised; and, third, that in any event the option was an enforceable contract under the doctrine of "promissory estoppel". We will consider these propositions in the order stated.

■ (1) It is not disputed that an option to purchase, not supported by a consideration, is a mere offer which may be withdrawn at any time before acceptance. *Richanbach v. Ruby,* 127 Or. 612, 621, 271 P. 600, 61 A. L. R. 1441; *Mossie v. Cyrus,* 61 Or. 17, 19, 119 P. 485, 119 P. 624; *Friendly v. Elwert,* 57 Or. 599, 605, 105 P. 404, 111 P. 690, 112 P. 1085, Ann. Cas. 1913A 357. Such an offer is not assignable. James on Option Contracts, 9, § 103, 241, § 602. The plaintiff argues that consideration may consist of a detriment to the promisee as well as a benefit to the promisor, and that here Bogle suffered a detriment in the inconvenience and expense he incurred in cruising the timber. Support for the application of this rule to the facts of this case is claimed to be found in the statement in 1 Williston on Contracts (Rev. ed.) 180, § 61, that " a promise to keep an offer open in consideration of an agreement to examine the land, which is the subject matter of the offer, and to investigate the title, is sufficiently supported." This is followed by the further statement: "The mere fact, however, that the offeree incurs detriment by going to expense or trouble in investigating the offer is not sufficient to make it irrevocable since *the detriment incurred was not requested by the offeror in return for a promise on his part.*" (Italics added.) The foregoing are merely specific applications of the general rule that "it would be a detriment to the promisee, in a legal sense, if he, at the request of the promisor and upon the strength of that promise, had performed any act which occasioned him the slightest trouble or

inconvenience, and which he was not obliged to perform." Williston, op. cit., 326, § 102A. See, also, the same text at p. 384, § 113. The foregoing principles were approved by this court in *Cummings v. Central Oregon Bank*, 110 Or. 101, 104, 223 P. 236.

The decision chiefly relied on by the plaintiff, *Wilson v. Spry*, 145 Ark. 21, 223 S. W. 564, does not support his position because the "memo of Understanding", which was in writing and had to do with a proposed sale of timber lands, contained an agreement of the offeree "to put estimators on at once and complete examination". It was this feature of the contract that persuaded the court to hold that there was consideration for the option, and to distinguish cases cited by the owners of the land "where the contract imposed no condition to be performed by the optionee, and where he makes the investigation solely for his own information and benefit." Of the latter type is *Comstock v. North*, 88 Miss. 754, 41 So. 374, in which the owners of the land offered in writing to withdraw it from the market for a stated period "during which time you may send your men to look it over." The offeree alleged that he had expended $5,000.00 in causing an investigation and examination to be made of the land. But the court held, nevertheless, that the writing was a mere offer, revocable before acceptance, for no obligation was imposed on the offeree and the expense incurred was on his own account and for the purpose of informing himself as to whether it was desirable to make the purchase, and that expense was not intended to benefit the owners and it was not incurred in their behalf. Similar decisions are *Texas Co. v. Dunn*, (Tex. Civ. App.) 219 S. W. 300, and *Brown Brothers Lumber Co. v. Preston Mill Lumber Co.*, 83 Wash. 648, 145 P. 964.

■ We can find nothing in the testimony in this case which even remotely suggests that Paulson requested Bogle to investigate or cruise the timber, and Bogle agreed to do so, or that such investigation and cruising as he undertook was in any sense for the benefit of Paulson. We think that the situation here is precisely the same as that portrayed in *Comstock v. North,* supra. We hold that there was no consideration for the option and it was therefore not assignable.

■■ (2) The claim that the option was exercised will not stand against the facts. As we have seen, the option was a mere offer. It is axiomatic that to constitute a contract based upon offer and acceptance the acceptance must coincide with and be in the same terms as the offer, and that if a new provision is suggested the answer is a mere counter-offer, and, until that has been assented to by the one making the offer, there is no meeting of the minds and hence no contract. *Ellingsworth v. Shannon,* 161 Or. 106, 110, 88 P. (2d) 293, and Oregon cases there cited. The insertion of new and different terms in the attempted acceptance amounts in legal effect to rejection of the offer. *Shaw Wholesale Company v. Hackbarth,* 102 Or. 80, 99, 198 P. 908, 201 P. 1066.

■ It will be recalled that the complaint alleged that on or about April 2, 1946, the defendant granted Bogle an irrevocable option to purchase the timber for $84,000.00. The proof shows that this allegation is not true. Bogle was not granted an option on that or any other date at that price; the only option which he ever received was at a price of $4.50 a thousand for approximately 21,000,000 feet, or $94,500.00. That is the testimony of both Bogle and Paulson, and it is not contradicted. When Bogle told Paulson on April 27, 1946, that he had sold his option for $10,000.00 to

the Ralph L. Smith Lumber Company but that that company was unwilling to pay $94,500.00 for the timber and asked Paulson to reduce his price, he rejected the offer which Paulson theretofore had made to him. No contract arising out of the acceptance of that offer by Bogle or the Ralph L. Smith Lumber Company ever came into existence, because it was never accepted by anyone. There then began new negotiations resulting in a new deal. The negotiations were carried on at first by Bogle, and not on his own behalf—except in so far as he was interested in the outcome, since payment of the $10,000.00 promised him was contingent on the result—but on behalf of the Ralph L. Smith Lumber Company. Bogle had then passed out of the picture as a prospective purchaser and the lumber company had succeeded to his place. On the next day Paulson and representatives of the Ralph L. Smith Lumber Company came together and at that time Paulson offered to sell the timber to the company for $84,000.00 and granted the company twelve days in which to complete the still unfinished cruise. This was the new deal; it was solely between Paulson and the Ralph L. Smith Lumber Company—an offer ultimately ripening into a contract—and that fact cannot be altered by Paulson's testimony on which the plaintiff relies, that he "treated the Bogle and the Smith deal as one". He could not by treating the deal as one change the facts or their legal effect, nor convert an offer and a subsequent sale to the Ralph L. Smith Lumber Company into an irrevocable option or a sale to Bogle.

(3) The doctrine of "promissory estoppel" is an innovation upon the law of consideration for contracts. It has never up to this time been recognized by this court. It has, however, the authority of the American

Law Institute, Judge Learned Hand (*Porter v. Commissioner of Internal Revenue,* C. C. A. 2d, 60 F. (2d) 673, 675), and Professor Williston (1 Williston, op. cit., 494 et seq., §§ 139, 140). Professor Williston concedes that "at present it is opposed to the great weight of authority" (idem., p. 502). The Mississippi court says that the principle is "one to be applied with caution and only when the facts are well within it." *Lusk-Harbison-Jones v. Universal Credit Co.,* 164 Miss. 693, 145 So. 623. Professor Williston says: "The binding thread in all the classes of cases which have been enumerated is the justifiable reliance of the promisee and the hardship involved in refusal to enforce the promise." Idem., p. 501.

Whether or not this doctrine is destined eventually to become a part of the law of this state we are satisfied that it cannot be properly invoked in the present case. As formulated in the Restatement the rule reads:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." Restatement, Contracts, § 90.

■ Even though it could be said that the promise (to sell the timber) was such as Paulson should have reasonably expected to induce action of a definite and substantial character, the evidence does not support the claim that it did induce such action. The only action pointed to was the cruising of the timber by Bogle. If he had done this we might be faced with the question whether the doctrine of "promissory estoppel" in this state is to be adopted. By Bogle's own testimony, which is all there is on the question,

he merely made a preliminary survey "to know whether it would justify a cruiser or not", in the meantime seeking out the Ralph L. Smith Lumber Company as a possible purchaser. It was that company which in fact made the cruise. If this were a case in which Bogle were trying to enforce his option we think it could not be said either that he had taken the action contemplated or that injustice could be avoided only by enforcement of the promise.

■ When the evidence is analyzed and justly appraised in the light of the appropriate rules of law it is demonstrated that the plaintiff, Small, did not find and introduce a purchaser of the timber to the defendant. All that he did was to find and introduce to Paulson a man (Bogle) who found and introduced to Paulson a purchaser of the timber, namely, the Ralph L. Smith Lumber Company. This was not a fulfillment by Small of the terms of his employment. There was a failure of proof, and the court erred in denying the defendant's motion for a directed verdict.

It results that the judgment is reversed and the cause remanded to the Circuit Court with directions to enter judgment for the defendant.