Argued and submitted November 18, 2020; vacated and remanded for entry of judgment declaring the rights of parties, otherwise affirmed August 18, 2021

Cara Lee BOROUGH
and Loren M. Caldwell,
*Plaintiffs-Appellants,*

*v.*

Betty H. CALDWELL,
as Trustee of the Loren M. Caldwell Trust;
Betty Caldwell, an individual;
Cody Duerst, an individual; and
Sophia Duerst, an individual,
*Defendants-Respondents.*

Marion County Circuit Court
18CV38388; A171075

497 P3d 1260

This is a declaratory judgment action related to a disputed option to purchase real property held in trust. The parties are the trustee, the trust beneficiaries, and the option holders. When the trust beneficiaries learned that the trustee was considering selling the property to the option holders, they sought declarations that the option agreement was "null, void, and of no effect," as well as an order directing the trustee to sell the property to them on particular terms. The trial court concluded on summary judgment that the option agreement was valid, declined to order the requested sale to the trust beneficiaries, and dismissed the trust beneficiaries' claims. The trust beneficiaries appeal. *Held*: The trial court did not err in concluding that the option agreement was valid because, under the circumstances, it amended the trust. The trial court also did not err by declining to order the trustee to sell the property to the trust beneficiaries. The trial court did err, however, in failing to declare the rights of the parties, as is required in a declaratory judgment action.

Vacated and remanded for entry of judgment declaring the rights of parties; otherwise affirmed.

Audrey J. Broyles, Judge.

Matthew J. Kalmanson argued the cause for appellants. Also on the briefs was Hart Wagner LLP.

J. Kevin Shuba argued the cause for respondent Betty H. Caldwell, as Trustee, and respondent Betty Caldwell, individually. Also on the brief were Shayna M. Rogers and Garrett Hemann Robertson P.C.

Elena M. Farley argued the cause for respondents Cody Duerst and Sophia Duerst. Also on the brief was Martinis & Hill.

Before Armstrong, Presiding Judge, and Aoyagi, Judge, and Sercombe, Senior Judge.

AOYAGI, J.

Vacated and remanded for entry of judgment declaring the rights of parties; otherwise affirmed.

**AOYAGI, J.**

This is a declaratory judgment action related to an option to purchase real property. Under the terms of a trust, Betty Caldwell has the right to live on certain real property in Silverton for life. If she chooses to leave the property and it is sold during her lifetime, the proceeds are to be split between her and plaintiffs (her deceased husband's two adult children from a prior marriage). Otherwise, plaintiffs are to receive the entire proceeds from selling the property upon her death. In dispute is an option agreement that Betty's husband (the trust settlor) executed before his death, which gives the Duersts (Betty's grandson and his wife) an option to purchase the Silverton property on certain terms within 180 days after Betty's death. When Betty expressed an intention to sell the property to the Duersts on the option terms during her lifetime, plaintiffs filed this action against Betty and the Duersts, seeking (1) a declaration that the option agreement was "null, void, and of no effect," and (2) a judgment directing Betty to sell the Silverton property to plaintiffs. The trial court dismissed plaintiffs' claims on summary judgment, concluding that the option agreement was valid and declining to order a sale to plaintiffs. Plaintiffs appeal. For the following reasons, we affirm on the merits, but we vacate and remand for entry of a new judgment that declares the rights of the parties.

## FACTS

In reviewing a grant of summary judgment, we view the record in the light most favorable to the nonmoving party. ORCP 47 C. We must determine whether there are genuine issues of material fact and, if not, whether the moving party was entitled to judgment as a matter of law. *Id*. We state the facts accordingly.

In 2008, Loren Caldwell created a revocable trust called The Loren M. Caldwell Trust. Loren designated himself as trustee, and he designated his wife Betty as successor trustee in the event of his death. The trust's main asset was a farm property in Silverton where Loren and Betty were living. Under the trust instrument, if Loren dies first, Betty may reside at the Silverton property for the remainder of

her life and, upon her death, it will be sold, with all proceeds going to plaintiffs. Alternatively, if Betty decides during her lifetime that she no longer wants to live there, the property is to be sold and the proceeds divided between Betty (50 percent) and plaintiffs (50 percent).

In 2015, seven years after the trust's creation, Loren executed a document titled "Option to Purchase Real Property," which purports to grant the Duersts a "sole and exclusive" option to purchase the Silverton property—including the real property, improvements, and farm equipment—on certain terms, exercisable for 180 days after the death of the second to die of Loren and Betty. Specifically, the option allows the Duersts to buy the Silverton property for $300,000, payable in monthly installments of $1,432.25 for 30 years, with no down payment and interest accruing at four percent per annum. The option agreement is between "Loren M. Caldwell, Trustee of the Loren M. Caldwell Trust," and the Duersts. Loren signed the agreement as "Loren M. Caldwell, Trustee," and the Duersts signed it individually. Shortly after its execution, Loren recorded the option agreement in Marion County.

In 2016, Loren died.

In 2018, Betty's attorney notified plaintiffs that Betty "has decided that she can no longer reside on the real property," that she "is planning to move," and that she intended to sell the property to the Duersts "under the terms Loren established" in the option agreement. Plaintiffs objected and demanded a public sale. Soon thereafter, plaintiffs offered to purchase the property for $600,000. More precisely, they offered to pay Betty $300,000 for the property, because, under the trust terms, if the property sold for $600,000, Betty would receive $300,000 and they would receive $300,000. Betty did not respond to plaintiffs' offer.

Plaintiffs filed this declaratory judgment action, seeking two things. First, plaintiffs asserted that, pursuant to ORS 28.020 and ORS 28.040,[1] they were "entitled to a

---

[1] The Legislative Assembly has acted to repeal ORS 28.040, effective January 1, 2022. *See* Or Laws 2021, ch 728, § 22. However, the statute is still in effect at the time of publication of this opinion, so we refer to current ORS 28.040.

judgment declaring the Option Agreement to be null, void, and of no effect," both (1) because the Duersts gave no consideration for the option, and (2) because a "necessary condition precedent to exercise of the right to purchase purportedly given by that Option Agreement has not occurred," *i.e.*, Betty's death.[2] Second, plaintiffs asserted that, pursuant to ORS 28.040, they were "entitled to a judgment directing Betty H. Caldwell to sell the Property to Plaintiffs on the terms offered in Plaintiffs' letter of May 29, 2018," *i.e.*, for a total price of $600,000, with $300,000 to be paid to Betty on closing and the other $300,000 to "consist of Plaintiffs' 50% equity in the Property."

In their answers, both Betty and the Duersts asserted that the option agreement was valid. They also raised various counterclaims. In her first counterclaim, Betty sought a declaration that it was consistent with her trustee duties to sell the property to the Duersts under the terms of the option agreement or on "similar" terms; the Duersts pleaded a similar counterclaim. As later explained in briefing, in defendants' view, even if the option itself is not exercisable during Betty's lifetime, it runs with the land and may be exercised upon Betty's death regardless of who owns the property, significantly affecting the property's market value.

Betty moved for summary judgment on plaintiffs' claims. Pointing to the trust's amendment clause—under which Loren reserved the right to alter or amend the trust at any time "by written instrument signed by the Trustor and accepted by the Trustee"—Betty argued that the option agreement amended the trust. She further argued that, unlike a contract, a trust amendment does not require consideration, such that it was irrelevant whether the Duersts gave consideration for the option.

The Duersts also moved for summary judgment. They adopted Betty's argument that the option agreement

---

[2] To be clear, and as discussed more later, plaintiffs sought only a declaration that the option agreement was *invalid* for the stated reasons. They did not seek a declaration as to when the option could be exercised if it was *valid*, or as to what effect a *valid* option agreement had on the market value of the property during Betty's lifetime.

amended the trust. They also raised an alternative argument that, even if consideration was required, the option agreement was enforceable on a promissory-estoppel theory.

Plaintiffs opposed both summary judgment motions. They argued that the option agreement did not amend the trust, that the option agreement was not supported by any consideration from the Duersts,[3] and that promissory estoppel did not apply. They also argued that, even if an option existed, the Duersts could not exercise it during Betty's lifetime and, upon her death, could exercise it only if the trust still owned the property.

After a hearing, the trial court granted summary judgment in defendants' favor on plaintiffs' claims. In ruling orally, the court said, "I don't think that there is any issue as to the validity of that option, and I do not believe that the Court has the authority to require the Defendants to sell the property to the Plaintiffs." The court then issued a written order on summary judgment, which stated:

> "Plaintiffs' cause of action for a declaration that the 2015 Option is 'null, void, and of no effect' is dismissed with prejudice because, when viewed in a light most favorable to the plaintiffs, there is no question of fact that the 2015 Option is valid; and

> "Plaintiffs' cause of action for a judgment directing defendant Betty Caldwell to sell the subject property to the plaintiffs is dismissed with prejudice because when viewed in a light most favorable to the plaintiffs there is no evidence that would allow the court to order the defendant, Betty Caldwell, to sell the subject real property to the plaintiffs."

After granting summary judgment to Betty and the Duersts, the court entered a general judgment that dismissed plaintiffs' claims with prejudice, dismissed Betty's and the Duersts' various counterclaims without prejudice, and designated Betty and the Duersts as the prevailing parties.

---

[3] The option agreement states that consideration was given, but plaintiffs disputed that fact. Defendants have taken varying positions over time regarding consideration.

Plaintiffs appeal, assigning error to the trial court's grant of summary judgment for Betty and the Duersts on plaintiffs' claims.

## SUMMARY JUDGMENT—OPTION VALIDITY

We begin with plaintiffs' claim regarding the validity of the option agreement. Plaintiffs sought a declaration that the option agreement was "null, void, and of no effect," both because the Duersts gave no consideration for it and because a "necessary condition precedent" to exercising any option that existed (Betty's death) had not occurred. The parties put forward various arguments to the trial court as to the propriety of summary judgment. Ultimately, the trial court concluded that there was no genuine issue of material fact and that, as a matter of law, "the 2015 Option is valid."

Although the court did not state its reasoning on the record, it appears from context that the court rejected plaintiffs' consideration argument on the ground that Loren had amended the trust by executing and recording the option agreement, thus obviating the need for consideration. We therefore address that issue first.

In addressing issues of trust law, we look both to the Uniform Trust Code (adopted in 2005) and to Oregon case law, because "the common law remains relevant." *Hope Presbyterian v. Presbyterian Church (USA)*, 352 Or 668, 687 n 5, 291 P3d 711 (2012); *see also* ORS 130.025 ("The common law of trusts and principles of equity supplement this chapter, except to the extent modified by this chapter or other law."). As relevant here, a revocable trust "is a trust over which the settlor retains complete control while alive." *Tseng v. Tseng*, 271 Or App 657, 659, 352 P3d 74, *rev den*, 358 Or 69 (2015); *see also* ORS 130.010(16) ("'Revocable trust' means a trust that can be revoked by the settlor without the consent of the trustee or a person holding an adverse interest."); ORS 130.510 ("While the settlor of a revocable trust is alive, rights of the beneficiaries are subject to the control of the settlor, and the duties of the trustee are owed exclusively to the settlor."). During the settlor's lifetime, the settlor may "revoke or amend the trust," ORS 130.505(1), and the parties agree that consideration is immaterial to the formation,

amendment, or revocation of a trust, *see Hope Presbyterian*, 352 Or at 695.

As for process, a settlor may revoke or amend a revocable trust that is subject to the Uniform Trust Code "[b]y substantial compliance with a method provided in the terms of the trust" or, "[i]f the terms of the trust do not provide a method, by any other method, except for execution of a will or codicil, manifesting clear and convincing evidence of the settlor's intent." ORS 130.505(3). The commentary to ORS 130.505(3) sheds some light on the purpose of the "substantial compliance" standard:

> "Under subsection (3) a settlor may revoke or amend a revocable trust by substantial compliance with the method specified in the terms of the trust. Failure to comply with a technical requirement, such as a required notarization, may be excused as long as compliance with the method specified in the terms of the trust is otherwise substantial. * * * The method specified in the terms of the trust is a reliable safe harbor and should be followed whenever possible."

Valerie J. Vollmar, *The Oregon Uniform Trust Code and Comments*, 42 Willamette L Rev 187, 310 (2006) (hereinafter *Oregon UTC & Comments*).

Here, the amendment clause of Loren's trust reserved to Loren "the right to alter or amend this Agreement at any time, by written instrument signed by the Trustor and accepted by the Trustee." Betty and the Duersts argued to the trial court—and the trial court implicitly agreed—that Loren substantially complied with that procedure when he executed and recorded the option agreement in 2015. Plaintiffs claim error, arguing that the option agreement concerns trust property but that it did not amend the trust because Loren did not substantially comply with the trust's amendment procedure. We are unpersuaded that the trial court erred.

We begin with a couple basic points to frame our analysis. On the one hand, it cannot be the case that *every* written instrument pertaining to real property held in a revocable trust, which is executed by the trustee who is also the settlor, necessarily has the effect of amending the trust. Consider, hypothetically, if Loren had granted a minor

access easement to a neighboring property owner, signed the easement document as trustee (because it involved trust property), and then recorded it with the county clerk. Such an event would place an encumbrance on trust property, but we are skeptical that it would amend the trust. On the other hand, a settlor must comply only "substantially," not strictly, with the amendment procedure in a revocable trust. *Oregon UTC & Comments* at 310. If Loren had prepared a document titled "Trust Amendment" that said he was amending the trust with the option agreement, attached the executed option agreement, and signed as both trustor and trustee, there can be little doubt that such action would have amended the trust. In other words, we see no reason that the option agreement could not amend the trust— the only question is whether Loren intended to amend the trust and substantially complied with the procedure to do so.

Whether the settlor of a revocable trust "substantially complied" with the amendment procedure for the trust will depend on the facts and circumstances of each case. In this case, several facts lead us to hold that the trial court did not err in concluding that Loren amended his revocable trust when he executed and recorded the option agreement with the Duersts in 2015, including the following.

The Silverton property was the main asset in Loren's revocable trust, as all parties agree. The 2015 option agreement does not directly conflict with the terms of the trust, such that the *only* possible inference is that Loren intended to amend the trust by executing it. However, in executing the option agreement, Loren sought to place a significant encumbrance on the trust's main asset. Moreover, the option agreement pertains directly to the *sale* of the Silverton property, which is significant because the trust expressly requires the sale of the property upon Betty's death, if it is not sold earlier. In other words, the trust specifically provides for the eventual sale of the Silverton property, and it is reasonable to infer that, in 2008, Loren's intention was that when that time came, the trustee would sell the property at fair market value to maximize the benefit to the beneficiaries. In 2015, however, Loren's intent in that regard

significantly changed, as reflected in the option agreement, when he decided to provide the Duersts with an opportunity to purchase the property on favorable terms if they wished to do so, even though it meant that his trust beneficiaries could receive less—potentially substantially less—from the sale of the property.[4]

Under the circumstances, the option agreement goes to the heart of the trust and its purpose: to provide for the eventual sale of the Silverton property and the distribution of any proceeds therefrom. Moreover, when Loren decided to give the Duersts an option, he did not act casually but, instead, had a lawyer prepare a written instrument, had the Duersts sign it, and recorded the executed document in Marion County.[5] Loren could have made crystal clear that he was amending the trust in the process by, for example, expressly saying so in the document, or signing the document on two lines as both trustor and trustee.[6] On

---

[4] Of course, how much the trust beneficiaries would ultimately receive would depend on a number of eventualities, including when the property was sold, whether the Duersts exercised the option, and the market value of the property at the time of sale. The point is that Loren's provision of an option to the Duersts— on extremely favorable terms according to plaintiffs—reflected a change of intent on Loren's part between 2008 (when he was concerned only with the interests of Betty and his adult children) and 2015 (when he was concerned with the interests of Betty, his adult children, and the Duersts).

[5] Plaintiffs point to the integration clause in the option agreement, which states that the option agreement "contains the entire agreement of the parties." In context, we agree with defendants that that provision precludes the Duersts from asserting any option rights other than those stated in the option agreement, but we do not view it as relevant to whether Loren intended the option agreement to amend the trust.

[6] Regarding the fact that Loren did not formally sign the option agreement as trustor—only as trustee—we note that, generally, as to a revocable trust, "when the settlor and the trustee are one and the same, there can be no doubt that the trustee's actions were approved by the settlor." *Tseng*, 271 Or App at 673 n 5; *see also, e.g.*, *Argo v. Moncus*, 721 So2d 218, 222 (Ala Civ App 1998) (settlor-trustee of revocable trust could waive notice requirement and "was not required to give herself written notice that she was deeding her home to Argo"); *Paul v. Arvidson*, 123 P3d 808, 810 (Okla Civ App 2005) ("[W]hen the grantor and the trustee are the same person, requiring strict compliance with formal delivery of written notice would be unnecessary and absurd."); *Moon v. Lesikar*, 230 SW3d 800, 806 (Tex App 2007) ("When the trustee is also the settlor of the revocable trust, the settlor is not required to serve written notice on himself."); *Gelber v. Glock*, 293 Va 497, 507, 800 SE2d 800, 806 (2017) ("[W]here the settlor of a revocable trust is also the trustee, a requirement of written notice to the trustee of the settlor's intention to revoke a prior conveyance may be satisfied by the settlor's written execution of instruments conveying the trust property to another party.").

the whole, however, Loren's intent is clear,[7] and he "substantially complied" with the trust's amendment procedure.

The trial court therefore did not err in rejecting plaintiffs' claim that the option agreement was "null, void, and of no effect" for lack of consideration.

As for plaintiffs' claim that the option agreement was "null, void, and of no effect" because a "necessary condition precedent" to exercising any option that existed (Betty's death) has not occurred, the court also did not err in ruling in defendants' favor. The existence of a condition precedent to the Duersts exercising their option would not make the option agreement "null, void, and of no effect." At most, the existence of an unmet condition precedent would make it premature to exercise the option, without affecting the *validity* of the option agreement. The trial court therefore did not err in concluding that the option agreement was "valid," regardless of the existence of a condition precedent that would have to be met for the Duersts to exercise the option.

In sum, the trial court did not err in ruling on summary judgment that the option was "valid," and we affirm that portion of the summary judgment ruling.

## SUMMARY JUDGMENT—DIRECTION TO SELL TO PLAINTIFFS

The other summary judgment ruling that plaintiffs challenge on appeal is the trial court's refusal to direct Betty to sell the Silverton property to plaintiffs on their offered terms. Under ORS 28.040(2), a person with an interest in the administration of a trust may seek a declaration of rights that "direct[s]" the trustee "to do or abstain from doing any particular act in their fiduciary capacity." Here, plaintiffs sought "a judgment directing Betty H. Caldwell to sell the Property to Plaintiffs on the terms offered in Plaintiffs' letter of May 29, 2018," *i.e.*, for a total price of $600,000, of

---

[7] To the extent that plaintiffs argue that extrinsic evidence in the summary judgment record supports their view that Loren did not intend to amend the trust when he executed the option agreement, the parties have not briefed the propriety of considering or limitations on considering extrinsic evidence in this context, and, in any event, none of the evidence cited by plaintiffs would create a genuine issue of material fact.

which $300,000 would be paid to Betty upon closing and the remaining $300,000 would "consist of Plaintiffs' 50% equity in the Property." The trial court granted summary judgment to defendants, reasoning that "there is no evidence that would allow the court to order the defendant, Betty Caldwell, to sell the subject real property to the plaintiffs."

In their summary judgment motions, Betty and the Duersts argued that there was no legal basis to direct Betty to sell the property to plaintiffs. Plaintiffs responded that the proposed sale to the Duersts was "below market and less than what plaintiffs are willing to pay for it" and that Betty should therefore be directed to withdraw the "offer" to the Duersts[8] and sell the property to plaintiffs on plaintiffs' offered terms. The trial court ruled in defendants' favor. It said in its oral ruling that it did "not believe that the Court has the authority to require the Defendants to sell the property to the Plaintiffs," stated in its written order that "there is no evidence that would allow the court to order [Betty] to sell the subject real property to the plaintiffs," and omitted the requested direction from the general judgment.

It is unclear whether plaintiffs sought a judgment directing Betty to sell the property to them on their proposed terms *even if* the option agreement was deemed valid. Defendants do not think so, based on the content of the referenced "letter of May 29, 2018." And it would not be surprising if plaintiffs' offer was meant to be contingent on the invalidity of the option agreement, given the open question (raised early on by Betty, who is in her 80s) whether a valid option would run with the land.

Assuming *arguendo* that plaintiffs' second claim did not depend on the option agreement being declared invalid, the trial court did not err in refusing to make the requested order. Even if Betty as trustee is obligated "to maximize the benefit to the beneficiaries" in the event that she sells the Silverton property, the trial court was not obligated to direct Betty to sell the property to plaintiffs for $600,000. Betty was still living on the property at the time of hearing

---

[8] *See Small v. Paulson*, 187 Or 76, 83, 209 P2d 779 (1949) ("It is not disputed that an option to purchase, not supported by consideration, is a mere offer which may be withdrawn at any time before acceptance.").

and indicated to the trial court that, if she could not sell the property to the Duersts during her lifetime, she might continue living there until her death, to honor her late husband's wishes that the Duersts have the opportunity to buy it. And, even if Betty decided to proceed with selling the property, there was no evidence of its actual market value—only plaintiffs' contention that the option price was below market value and that they were willing to pay $600,000 for the property. Under the circumstances, the trial court did not commit reversible error by declining to order Betty to sell the property to plaintiffs on plaintiffs' offered terms.

Finally, we note that, as part of their arguments on appeal, plaintiffs contest defendants' position that the Duersts' option runs with the land and therefore affects the market value of the property. That issue is not properly before us. The trial court did not rule on it, nor had it any need to do so given the scope of the declarations requested in the complaint. The only declarations that plaintiffs sought were a declaration that the option agreement was "null, void, and of no effect" and a direction to Betty to sell the property to plaintiffs for $600,000. As already discussed, the trial court did not err in concluding that plaintiffs were not entitled to either. To the extent that defendants' counterclaims raised issues about the circumstances under which Duersts could exercise their option or the option's effect on the current market value of the property, the trial court did not decide those issues, instead dismissing the counterclaims. Our review is properly limited to the issues on which the trial court ruled.

The trial court did not err in ruling on summary judgment that it would not direct Betty to sell the property to plaintiffs on their offered terms.

## LACK OF DECLARATIONS IN JUDGMENT

Having addressed the merits of the trial court's summary judgment rulings, we now turn to the form of its general judgment.

In a declaratory judgment action, "[i]f there is a justiciable controversy, the plaintiff is entitled to a declaration of its rights, even if that declaration is directly contrary to

what it believes its rights to be." *Beldt v. Leise*, 185 Or App 572, 576, 60 P3d 1119 (2003); *see also De Lanoy v. Taylor*, 300 Or App 517, 520, 452 P3d 1036 (2019) (When a "party asks for a declaration, it is incumbent on the court to declare the respective rights of the parties."). Perhaps because that approach is somewhat counterintuitive, trial courts sometimes *dismiss* declaratory judgment claims upon determining that the requested declaration would be improper— essentially treating them as they would a contract claim or other kind of failed claim—rather than making declarations different from the ones requested by the plaintiff. In such situations, we routinely vacate the existing judgment and remand for entry of a new judgment that contains a declaration of rights. *Doe v. Medford School Dist. 549C*, 232 Or App 38, 46, 221 P3d 787 (2009) ("When the dismissal of a declaratory judgment action was clearly based on a determination of the merits of the claim \*\*\*, our practice has been to review that determination as a matter of law and then remand for the issuance of a judgment that declares the rights of the parties in accordance with our review of the merits.").

This is such a situation. After granting summary judgment to Betty and the Duersts, the trial court should have entered a general judgment that declared the rights of the parties in a manner consistent with the summary judgment rulings. Plaintiffs are entitled to declarations, even if the declarations state the opposite of what they requested in their complaint. *Beldt*, 185 Or App at 576. Accordingly, we vacate the existing judgment and remand for entry of a judgment that declares the rights of the parties. Any declarations should be consistent with this opinion. Any declarations should also be limited to the claims that were pleaded and decided on summary judgment, *i.e.*, plaintiffs' request for a declaration that the option agreement was "null, void, and of no effect" and plaintiffs' request for an order directing Betty to sell the property to plaintiffs on the terms offered in their letter of May 29, 2018.

Vacated and remanded for entry of judgment declaring the rights of parties; otherwise affirmed.