39 N.J. Super. 103 (1956)
120 A.2d 633
EDWARD FRIEDMAN AND GUS ZACKARAKIS, PLAINTIFFS-RESPONDENTS,
v.
TAPPAN DEVELOPMENT CORPORATION, A NEW YORK CORPORATION, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued February 6, 1956.
Decided February 17, 1956.
*104 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Herman L. Fast argued the cause for defendant-appellant (Messrs. Fast & Fast, attorneys).
Mr. Joseph M. Rotolo argued the cause for plaintiffs-respondents (Messrs. Rotolo & Rotolo, attorneys).
The opinion of the court was delivered by CONFORD, J.A.D.
This is an appeal from a judgment of specific performance for the conveyance of certain realty in Bergen County. The nature of the legal questions presented necessitates setting forth the full text of the agreement upon which the action is founded.
"AGREEMENT made this 15th day of February, 1954 by and between TAPPAN DEVELOPMENT CORPORATION, a domestic corporation with its principal office at 1400 Broadway, New York *105 City, the `Seller,' and EDWARD FRIEDMAN of 1440 Broadway, New York City, the `Purchaser.'

WITNESSETH:
WHEREAS, TAPPAN DEVELOPMENT CORPORATION, has title to certain land in the State of New Jersey, in the Borough or Village of Old Tappan, located in said Borough or Village, near or at the line of division between the State of New York and the State of New Jersey, and,
WHEREAS, said TAPPAN DEVELOPMENT CORPORATION has offered to sell said real estate to EDWARD FRIEDMAN upon certain terms and conditions,
Now, Therefore It Is Agreed As Follows:
1. EDWARD FRIEDMAN agrees to pay TAPPAN DEVELOPMENT CORPORATION at the rate of Four Hundred ($400.00) Dollars per acre for each acre actually conveyed to EDWARD FRIEDMAN, and the TAPPAN DEVELOPMENT CORPORATION agrees to convey said acreage to EDWARD FRIEDMAN for the aforesaid sum of Four Hundred ($400.00) Dollars per acre on demand by EDWARD FRIEDMAN.
2. The TAPPAN DEVELOPMENT CORPORATION agrees not to sell or convey any part of its real estate holdings in Old Tappan to anyone other than EDWARD FRIEDMAN for a period of one year from the date hereof without the express written consent of EDWARD FRIEDMAN to said conveyance. The purchaser shall pay the cost of preparing a description of the property to be conveyed.
3. The TAPPAN DEVELOPMENT CORPORATION make no representations whatsoever as to the character of the real estate involved, zoning ordinances, state of title, marketability of title, liens, encumbrances, sewers, encroachments or restrictions of any kind whatsoever, and agrees only to convey whatsoever title it has. In the event the title tendered by the TAPPAN DEVELOPMENT CORPORATION is rejected by EDWARD FRIEDMAN for any reason whatsoever, then the only obligation of the TAPPAN DEVELOPMENT CORPORATION shall be to return the money paid, and there shall be no further claims by either party against the other, be it for cost of examination of title, survey, or other expenses of whatsoever type or nature.
4. The sum of $400.00 is to be paid upon the execution of this agreement to Murray Zazeela, Esq., the attorney for TAPPAN DEVELOPMENT CORPORATION, to be held by him until title to the first acre of land to be conveyed hereunder is delivered to EDWARD FRIEDMAN. However, in the event no conveyance is executed pursuant to this agreement for any land whatsoever for a period of sixty (60) days from the date hereof, that is to say the 15th day of April, 1954, then this agreement shall be and become null and void and neither party shall have any rights or obligations hereunder other than the obligation to return said sum of $400.00 to EDWARD FRIEDMAN.
*106 IN WITNESS WHEREOF, the parties hereto have hereunto set their hand and seal this 15th day of February, 1954.
 TAPPAN DEVELOPMENT CORPORATION
 By Murray Zezeela, Atty.
 EDWARD FRIEDMAN"
Delivery of executed copies of the agreement to both parties was not completed until March 5, 1954 or thereabout. The plaintiff Friedman, a lawyer, was concededly acting for his client, the plaintiff Zackarakis. On March 16, 1954 Zezeela, attorney for defendant, phoned Friedman and advised him the defendant "would not go through with the deal." This was confirmed by letter of March 22, 1954 from Zezeela to Friedman. Thereafter Friedman advised Zezeela that his client insisted upon going ahead with the transaction and would take all the property. Defendant refused to accede and offered to return the $400 deposit mentioned in the agreement, but plaintiffs declined the tender.
The principal ground of appeal is that the writing entered into by the parties was but a gratuitous option or continuing offer to sell the property at the rate of $400 per acre and that defendant effectively terminated its obligation thereunder by communicating a revocation of the offer to plaintiffs prior to their signification of an election to exercise the option with respect to any of the property. American Handkerchief Corp. v. Frannat Realty Co., 17 N.J. 12 (1954). Plaintiffs submit a dual response: (a) the agreement was a binding contract by plaintiffs to purchase one acre of the property within 60 days of the contract date and included an option to plaintiffs to take the balance of the land or any portion thereof at $400 per acre within one year. The asserted unconditional obligation to purchase the first acre and the payment of the $400 price therefor are contended to constitute the supporting consideration which renders the option for the remaining land irrevocable; (b) plaintiffs incurred expenses for survey and title examination in reliance upon the contract which the defendant had reason to foresee and this operates to make the option irrevocable.
*107 As to the first position stated, the legal conclusion advanced would be sound if the writing were construable as contended for. 1 Corbin, Contracts (1950), § 266, pp. 885, 886. But it is not. Nowhere in the agreement does the offeree bind himself to take and pay for a single acre of property. His obligation is only to pay $400 for each acre conveyed and conveyance is to take place only "on demand by Edward Friedman." Title may be rejected by Friedman "for any reason whatsoever," without liability and with the right to return of the deposit. If no conveyance is made to Friedman within 60 days the agreement is null and void and Friedman gets his money back. The distinguishing characteristic of an agreement of option, as contrasted with one of sale, is that it imposes no binding obligation on the holder of the option. Sooy v. Henkelman, 104 N.J.L. 540, 542, 543 (E. & A. 1928); 12 Am. Jur., Contracts, § 27, pp. 525, 526. This was the situation here. The first argument lacks substance.
The second ground advanced is based upon what has come to be known, interchangeably, as the doctrine of promissory estoppel, or of promises enforceable by reason of reliance, 1 Corbin, Contracts, supra, § 51, pp. 161, 162, § 204, p. 663; Restatement, Contracts, § 90 (1932); 1 Williston, Contracts (rev. ed. 1936), § 61, p. 176, § 139, p. 494; American Handkerchief Corp. v. Frannat Realty Co., supra (17 N.J., at pages 18, 19). Plaintiffs seek to bring their status within the protective umbrella of that rule on the basis of the following facts. On February 23, 1954, after negotiating, but prior to receiving defendant's signed copy of the agreement, Friedman wrote to a title company concerning the instant transaction, advising it that the arrangement required him to "ascertain what I am buying," that the acreage might be anywhere from "five or six acres" to "twenty to thirty acres," and requesting that the title company "unearth" for him the facts as to "what I am buying." Friedman did not countermand the order at any time. The title company delivered to Friedman a survey of the subject property April 13, 1954. It also began a title examination of the *108 property "two or three weeks" prior to March 22, 1954 without express request therefor, acting on an assumption from the February 23 letter that such an examination was desired by the applicant. Its location of the property had been completed by March 22 and it made no charge therefor. However, it did eventually bill Friedman $505 for a survey and examination of the title and that sum was paid.
Prior to the Supreme Court decision in the American Handkerchief Corp. case, supra, there was no indication by the courts of this State as to the extent to which, if at all, they would accept "action or forbearance" induced by a promise, to the reasonable expectation of the promisor, within Restatement, supra, § 90, or "reliance on a promise," Corbin, supra, part 1, chapter 8, as a substitute for the "bargained for consideration" which traditionally has been thought a prerequisite to an enforceable option. Williston, op. cit., supra, at pp. 180, 181. In the American Handkerchief Corp. case, supra, Chief Justice Vanderbilt for the Supreme Court broadly implied the acceptability of the doctrine but found it inapplicable to the case there presented, saying (17 N.J., at pages 18, 19):
"* * * There is authority, of course, to the effect that although an offer is without consideration and thus revocable, it becomes irrevocable by subsequent action in reliance upon it, 1 Corbin, supra, secs. 49-51, 263. But in these cases the act of the offeree, even if not constituting part of the performance bargained for and for which the offer was made, must be one that the offeror had reason to foresee, 1 Corbin, supra, sec. 51. Here quite clearly the defendant had no reason to expect that the plaintiff would enter into a binding sublease prior to obtaining its approval of the new subtenants and subleases, so it cannot be said that the plaintiff's change of position here made the other (sic) [offer] irrevocable. The offer did not anticipate any such action on the part of the plaintiff. `If the action by the offeree is not part performance of the requested consideration and also is not such action as the offeror had reason to foresee as the result of his offer, it will not make the offer irrevocable in any sense,' 1 Corbin, supra, sec. 51. * * *"
See Case Note, 4 DePaul L. Rev. 320 (1955), commenting on the foregoing decision; see also Tyree, Contracts, 5 Rutgers L. Rev. 166, 168 (1950). The amorphous nature of *109 the doctrine under examination is illustrated by the variation in the expressions of the authorities in its characterization: Porter v. Commissioner of Internal Revenue, 60 F.2d 673, 675 (2 Cir. 1932), affirmed 288 U.S. 436, 53 S.Ct. 451, 77 L.Ed. 880 (1933) (Judge L. Hand, "species of consideration"); Allegheny College v. National Chautauqua County Bank of Jamestown, 246 N.Y. 369, 159 N.E. 173, 175, 57 A.L.R. 980 (Ct. App. 1927) (Cardozo, C.J., "equivalent of consideration"); 1 Williston, op. cit., supra, § 139, p. 494 ("substitute for consideration"). A study of the kinds of promises which have been held actionable without regard to the existence of a consciously bargained for, or exchanged, equivalent consideration makes it evident that there is juridical substance underlying the formulation of the promissory estoppel rule in Restatement, supra, § 90. In varieties of situations courts have felt and reacted to the justice of applying societal compulsion upon promisors whose promises have foreseeably induced action or forbearance "of a definite and substantial character" where "injustice" could be "avoided only by enforcement of the promise" Corbin, op. cit., supra, §§ 193, 194, pp. 631, 637; Seavey, Reliance Upon Gratuitous Promises Or Other Conduct, 64 Harv. L. Rev. 913, 925, 926 (1951); Boyer, Promissory Estoppel: Requirements and Limitations of the Doctrine, 98 Univ. of Pa. L. Rev. 459, 494, 498 (1950); Annotation, 115 A.L.R. 152.
The kinds of cases in which we find reliance effective to hold the grantor of an option to purchase realty, not otherwise supported by consideration, are generally those wherein the optionee has made substantial improvements or expenditures on the realty. Spitzli v. Guth, 112 Misc. 630, 183 N.Y.S. 743 (Sup. Ct. 1920); Malmquist v. Peterson, 149 Minn. 223, 183 N.W. 138 (Sup. Ct. 1921); cf. Roberts-Horsfield v. Gedicks, 94 N.J. Eq. 82 (Ch. 1922), affirmed 96 N.J. Eq. 384 (E. & A. 1924). But there is fair concurrence of judicial opinion that reliance by the optionee consisting of no more than inspection of the premises or examination of the title thereto will not make a gratuitous *110 offer to sell or lease irrevocable. Comstock Bros. v. North, 88 Miss. 754, 41 So. 374, 376 (Sup. Ct. 1906); Texas Co. v. Dunn, 219 S.W. 300, 302 (Tex. Civ. App. 1920); Bancroft v. Martin, 144 Miss. 384, 109 So. 859, 111 So. 434 (Sup. Ct. 1926); Williston, op. cit., supra, § 61, pp. 180, 181; but see Small v. Paulson, 187 Or. 76, 209 P.2d 779, 783, 784 (Sup. Ct. 1949).
In the present case we do not find factual reliance "of substantial character" upon the offer. As noted, the offer was revoked March 16, 1954. The evidence indicates that had plaintiffs called off the title company on that date their expense, if any at all, would have been minimal. In short, this is not a case where "injustice can be avoided only by enforcement of the promise." Restatement, supra, § 90. We need express no view as to whether mere inspection of land or examination of title by an optionee may constitute "reliance" sufficient to preclude revocation of a gratuitous option.
Defendant has argued other points of dispute as to the availability of specific performance in this situation, such as uncertainty of the reference to the property, lack of mutuality of obligation, nullification of the offer by lapse of 60 days without conveyance, and vagueness of the agreement. One or two of these points appear to have considerable substance. We prefer, however, to rest our determination solely on the revocation prior to acceptance of what we deem to be a gratuitous option or continuing offer.
Reversed.