49 N.J. Super. 456 (1958)
140 A.2d 422
WELLMORE BUILDERS, INC., A CORPORATION OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
GREGORY H. WANNIER, CAROL G. WANNIER, HIS WIFE; ALEXANDER CAPLAN AND J. LEWIS FIACRE, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued December 16, 1957.
Decided April 7, 1958.
*459 Before Judges GOLDMANN, FREUND and CONFORD.
Mr. Harry Weltchek argued the cause for appellant (Messrs. Weltchek & Weltchek, attorneys).
Mr. Homer R. Zink argued the cause for respondents Wannier (Messrs. Jones, Voigt & Fink, attorneys).
Mr. Addison E. Ely argued the cause for respondents Caplan and Fiacre (Messrs. Snevily & Ely, attorneys).
The opinion of the court was delivered by GOLDMANN, S.J.A.D.
Plaintiff Wellmore Builders, Inc. appeals from a summary judgment entered in the Chancery Division in favor of all defendants and dismissing its action for injunctive relief and specific performance.
On March 9, 1946 the predecessors in title of Wellmore and defendants Wannier entered into an agreement imposing certain obligations upon the parties thereto and their *460 assignees. Under that agreement plaintiff's predecessor was authorized to construct Woodside Road within the boundaries of the property of the Wanniers' predecessor and to obtain reimbursement for the cost thereof from the proceeds of the latter's sale of nine lots serviced by the road. Thereafter plaintiff and the Wanniers, as successors in title, being desirous of altering the rights and duties imposed by the prior agreement and settling their mutual obligations, entered into a new agreement, dated May 11, 1955, which in summary provided, among other things, that
(1) Plaintiff was to construct Woodside Road through the Wannier property in such a manner that it would be accepted by the municipality as a public street, and also install the necessary storm, water and sanitary sewers.
(2) The parties were to execute an instrument abrogating the agreement of March 9, 1946.
(3) The Wanniers were to convey to plaintiff certain property owned by them on the west side of Woodside Road, together with their right to the conveyance of a 30-foot strip of land adjacent thereto, and obtain a release from an existing mortgage.
(4) The Wanniers were to execute an instrument granting plaintiff the privilege, for a period of five years, of purchasing from them either or both of their two lots on the east side of Woodside Road (designated on a sketch plot as lots A and B, B being the southernmost) if they decided to sell either or both during that period. The purchase price was fixed at $4,000 for each lot. The Wanniers were to give written notice to plaintiff of their intention to sell, plaintiff to have 45 days within which to exercise its option. If plaintiff failed to do so, defendants could sell either or both of the lots without restriction.
In furtherance of the new agreement, Wellmore and the Wanniers executed the following on June 16, 1955: (1) an agreement abrogating the agreement entered by their predecessors in title on March 9, 1946; and (2) a so-called "option agreement" containing the same terms as set out in the agreement of May 11 preceding, with the added provision that the parties would have the right to specific enforcement of the agreement. The option contract makes no mention of consideration or reference to the May 11, 1955 agreement.
Plaintiff thereafter constructed Woodside Road fronting on defendant Wanniers' property and installed the utilities, *461 in fulfillment of its obligations under its agreement with them. The Wanniers, in turn, conveyed to plaintiff the property to the west of that road.
On March 13, 1957 the Wanniers entered into a written agreement with defendants Caplan and Fiacre to grant them an easement to install and maintain a sanitary sewer and storm sewer in the most southerly 15-foot strip of lot B. This easement obviated the necessity of Caplan and Fiacre building a sewage pumping station for their proposed land development to the east, and it was obtained at the particular request of the Planning Board of the City of Summit. The easement grant followed on April 6, 1957, the consideration being $5,000. The grant was "expressly made subject to a certain option entered into between the Grantors and Wellmore Builders, Inc.," and the Wanniers warranted that they would not sell or convey the lot in question (B) until after the expiration of the option agreement. Caplan and Fiacre have as yet done no work on their proposed sewers, but await the resolution of this action.
Upon learning of the easement agreement, plaintiff treated it as an election by the Wanniers to sell, and on April 23, 1957 notified them of its election to exercise its option to buy. The Wanniers refused to make any conveyance, and plaintiff thereupon instituted this action against them, Caplan and Fiacre, to (1) enjoin delivery and acceptance of the easement, (2) enjoin Caplan and Fiacre from engaging in any excavation or construction work upon the property, (3) declare any such easement null and void, (4) enjoin the Wanniers from executing any further deeds or agreements purporting to grant or transfer any interest in the lands affected by the option agreement, and (5) for specific performance of the option agreement by ordering the Wanniers to convey both lots to plaintiff. On the basis of its complaint and affidavit, plaintiff obtained a temporary restraint which, however, was vacated on the return of the order to show cause.
After the close of the pleadings and the filing of affidavits there were cross-motions for summary judgment. Plaintiff *462 specifically sought judgment ordering the Wanniers to convey lot B to it, enjoining them from executing any further deeds or agreements purporting to grant or transfer an easement or other interest in lot A, and setting aside and declaring null and void the agreement purporting to grant Caplan and Fiacre any rights in and to lots A and B. The Chancery Division judge granted defendants' motion and dismissed the complaint, expressing doubt as to whether there was any consideration supporting plaintiff's claimed option right, and this on the authority of Friedman v. Tappan Development Corp., 39 N.J. Super. 103 (App. Div. 1956), affirmed 22 N.J. 523 (1956). The trial court went on to say that assuming the agreement of June 16, 1955 was supported by a consideration, Wanniers' grant of the easement and their covenant not to sell the lots during the remainder of the five-year period did not amount to a breach of their agreement with Wellmore, and therefore plaintiff was not entitled to the specific performance and injunctive relief it sought. The court also concluded that the grant of the easement was not a sale within the meaning of the so-called option agreement.
On this appeal plaintiff asserts that its agreement with the Wanniers was supported by valuable consideration; that the Wanniers in effect granted it an option; that their grant of an easement to Caplan and Fiacre constituted an encumbrance of the lands covered by the option; and finally, that plaintiff was entitled to exercise its option at this time. Based upon this argument, plaintiff submits that it is presently entitled to a judgment of specific performance or, at the very least, that the easement should be set aside and the Wanniers restrained from making further conveyances and agreements except in strict conformance with the option agreement. On their part, defendants contend that the so-called option agreement was not an option but merely a right in plaintiff of first refusal at a fixed price, provided the Wanniers decided to sell; that there was no consideration supporting the privilege of first refusal granted plaintiff; that the grant of the easement to Caplan and Fiacre was *463 not a sale within the meaning of the Wellmore-Wannier agreement and did not encumber the property; and that the Wanniers could, consistently with the existence of the privilege of first refusal given Wellmore, bind themselves by contract with Caplan and Fiacre not to sell the property during the remainder of the five-year period.
Defendants rely on Friedman v. Tappan Development Corp., above, to support the view that there was a lack of consideration for the May 11, 1955 agreement between plaintiff and the Wanniers  a lack of mutuality of obligation, a term which receives extended discussion in that case, 22 N.J. at page 532 et seq. We do not find Friedman applicable for the purpose cited by defendants. There is ample consideration to support plaintiff's claimed "option."
Although plaintiff sues to enforce the so-called option agreement we must actually consider three agreements to arrive at a proper understanding of the arrangement between it and the Wanniers: the major agreement of May 11, 1955 and the supplementing abrogation and "option" agreements of June 16, 1955. It is now settled that two or more writings which are all parts of one transaction relating to the same subject matter, are to be read and interpreted as one instrument, whether or not they refer to each other. Lawrence v. Tandy & Allen, Inc., 14 N.J. 1, 6 (1953); Friendly Consumer Discount Co. v. Foell, 39 N.J. Super. 410, 415 (App. Div. 1956); 3 Corbin on Contracts (1951), §§ 549, 583, pp. 100, 272; 3 Williston on Contracts (rev. ed. 1936), §§ 628, 840, pp. 1801, 2354. The instruments need not be executed on the same day nor each contain a separate mention of consideration. The consideration for the option here claimed by plaintiff is found in the May 11, 1955 agreement. In return for Wellmore constructing the road at its own expense and installing utilities, defendants Wannier were to do certain enumerated things: to convey their lands to the west of Woodside Road, to execute a contract abrogating the March 9, 1946 agreement of the predecessors in title, and to execute the "option agreement" here in question.
*464 Plaintiff's claim that it had an outright option under its agreement of June 16, 1955 with the Wanniers is a misconception of existing law. That agreement gave them the privilege of first refusal, classified by the authorities as a right of preemption or preemptive right option. 6 American Law of Property (1952), § 26.64, p. 506; Simes and Smith, Law of Future Interests (2d ed. 1956), § 1154, p. 60; 1 Corbin on Contracts (1950), § 261, p. 858; 4 Restatement of the Law of Property (1944), § 393, p. 2319, comment (f); Socony-Vacuum Oil Co., Inc., v. Pabian, 32 N.J. Super. 390 (Ch. Div. 1954); and cf. generally, Annotation, 34 A.L.R.2d 1158 (1954). There is a material difference between a conventional option and a right of preemption. An ordinary option gives the optionee the power to compel the owner of the property to sell it at a stipulated price, whether he be willing to part with ownership or not. On the other hand, a privilege of first refusal or preemption does not give the preemptioner the power to compel the owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the preemption, at the stipulated price, and the preemptioner may then elect whether he will buy. The preemptioner's right to a conveyance depends upon the grantor's either notifying him that he desires to sell or offering or contracting to sell the premises to a third party without first giving the preemptioner the opportunity to buy at the stated price. See Corbin and American Law of Property, above; contrast Tantum v. Keller, 95 N.J. Eq. 466 (Ch. 1924), affirmed o.b., 96 N.J. Eq. 672 (E. & A. 1924).
Plaintiff's exercise of its right of preemption was therefore dependent upon the Wanniers first expressing their desire to sell within the period of five years from May 11, 1955. Was the grant of the easement to Caplan and Fiacre a sale within the meaning of the Wellmore-Wannier agreement of June 16, 1955 giving Wellmore the privilege of first refusal? We conclude that it was not. In ordinary usage the word "sell," in the absence of limiting language, *465 implies an alienation or transfer, or contract for such transfer, and imports that the whole title to the estate disposed of is to be parted with for a consideration. 79 C.J.S. Sell p. 1033 (1952). An easement, of course, is an encumbrance  a grant of a legal estate, distinct from ownership, to use in some way the land of another. See, for example, Denman v. Mentz, 63 N.J. Eq. 613 (Ch. 1902) (light); Simpson v. Klipstein, 89 N.J. Eq. 543 (E. & A. 1918) (street); Garber v. Stern, 100 N.J. Eq. 470 (Ch. 1927), affirmed o.b., 101 N.J. Eq. 742 (E. & A. 1927) (street; right of utility to maintain poles and wires); see, also, Propper v. Colson, 86 N.J. Eq. 399 (E. & A. 1916); Kuhnen v. Parker, 56 N.J. Eq. 286 (Ch. 1897); Annotation, 57 A.L.R. 1253, 1426 (and see page 1440, sewers) (1928); 102 A.L.R. 852, 883 (1936), supplementing 59 A.L.R. 189, 246 (1929); 92 C.J.S. Vendor and Purchaser § 206, p. 66 et seq. (1955); 55 Am. Jur., Vendor and Purchaser, §§ 257-264, pp. 709 et seq. (§ 263, p. 712, sewers) (1946). But the grant of an easement is not a sale. The owner of the servient estate still owns the fee and has all the rights and benefits of ownership consistent with the enjoyment of the easement. Tyler Co. v. Hansen, 20 N.J. Super. 309, 312 (App. Div. 1952), certification denied 10 N.J. 344 (1952); and see our recent decision in Leasehold Estates, Inc., v. Fulbro Holding Co., 47 N.J. Super. 534 (App. Div. 1957), certification granted 25 N.J. 538 (1958).
While the Wanniers' grant of the easement to Caplan and Fiacre, coupled with their undertaking not to sell to any one until after the expiration of their so-called option agreement with plaintiff, may represent a breach of the agreement with plaintiff in that it destroyed the Wanniers' freedom of choice, it was not an exercise of an election to sell to a third party, and therefore plaintiff's primary right was not thereby invoked. Cf. Sand v. London & Co., 39 N.J. Super. 513 (App. Div. 1956); Lakeside Park Ass'n of Kelseyville v. Keithly, 43 Cal. App.2d 418, *466 110 P.2d 1055 (App. Ct. 1941). Accordingly, plaintiff is not entitled to specific performance.
Caplan and Fiacre, of course, had both constructive and actual notice of plaintiff's preemptive right. In the first place, it was recorded; secondly, their easement was made subject to plaintiff's right by the express language of the Wannier grant. Their easement is therefore subject to that right, so that should they choose to proceed thereunder they do so at their peril.
We need not consider what plaintiff's remedy would be were the situation such that it was permitted, through the Wanniers, to exercise its right of first refusal within the five-year period. Accordingly, we do not decide whether the easement would be cut off by the exercise of that right, cf. Cwiakala v. Giunta, 23 N.J. Super. 261 (Ch. Div. 1952) (lease subsequent to option, cut off), or Wellmore entitled to an abatement in the purchase price because of the presence of the sewers in the southernmost strip of lot B, cf. Dixon v. Ober, 141 N.J. Eq. 289 (Ch. 1948); 81 C.J.S. Specific Performance § 21b, p. 447 (1953).
Our courts hold to the view that the construction to be adopted of a written instrument like the agreement of first refusal here in question is the one "which appears to be in accord with justice and common sense and the probable intention of the parties. It is to be interpreted as a business transaction entered into by practical men to accomplish an honest and straightforward end." Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956).
Part of the consideration of the Wellmore-Wannier agreement was that the Wanniers would give Wellmore the first right to buy lots A and B on the east side of Woodside Road should they decide to sell at any time within five years. The parties, as "practical men to accomplish an honest and straightforward end," obviously contemplated as part of their bargain that the Wanniers would not destroy their freedom of choice to make such an offer of sale within the five years, and this they obviously did when they made the agreement with Caplan and Fiacre. By that transaction they *467 subjected themselves to the sanction of a lawsuit if they ever, during the five-year period, decided to sell, and offered the property to plaintiff as they were bound to do in such case under the agreement here sued upon. As plaintiff argues, it paid for the right to have the Wanniers remain in such a position that they could, if they so desired, freely elect to sell the property.
It is no answer to say that the defendants could, at some time in that period, have decided in their private mind that they would not sell the lots to any one before the expiration of their agreement with Wellmore, for they were still free, at any moment of the time remaining, to change their mind and offer to sell. This status was destroyed by the agreement with Caplan and Fiacre. Suppose that shortly before executing the easement agreement with Caplan and Fiacre death or the law had intervened. The choice to sell the lots would then have fallen to a receiver or a trustee in bankruptcy, to the Wanniers' heirs or devisees, or even to a judgment or tax lien creditor.
Equitable considerations dictate that the Wanniers could not, within just two years of their agreement with plaintiff, encumber the property with a relatively permanent type of easement and bind themselves not to sell the lots within the three years remaining, obviously for the sole purpose of protecting the easement holder against the plaintiff's preemptive right, thus effectively destroying plaintiff's right of first refusal prematurely.
It has not escaped our attention that in granting the easement, the Wanniers have in effect twice received payment  once from Wellmore in the form of its building of the street and installation of important utilities, and the second time from Caplan and Fiacre, who are not bona fide purchasers for value, in the form of their payment of $5,000.
We are not unaware of the argument which defendants might have projected, but did not, that the preemption agreement here under consideration is possibly invalid as an unreasonable restraint upon alienation. Consult 6 American Law of Property (1952), §§ 26.65-26.67, pp. 507-512; *468 Simes and Smith, Law of Future Interests (2d ed. 1956), § 1154, pp. 60-64; 4 Restatement of the Law of Property (1944), § 413(2) (a) and comment (f), pp. 2441, 2444; but cf. 5 Powell on Real Property (1956), § 771, p. 597 et seq., expressing the view that the problem of a preemption possibly offending the rule against restraints upon alienation is one of "balancing social utilities." However, that defense was never raised in the trial court nor, indeed, has the point been included in the Statement of Questions Involved or been briefed or argued before us. We will therefore not consider the issue. R.R. 1:7-1 (c); State ex rel. Wm. Eckelmann, Inc., v. Jones, 4 N.J. 207, 214 (1950); Ibid., 4 N.J. 374 (1950); Spear v. Lyndale Mfg. Co., 35 N.J. Super. 385, 389-390 (App. Div. 1955); Springdale Park, Inc., v. Andriotis, 30 N.J. Super. 257, 266 (App. Div. 1954); cf. State v. Janiec, 11 N.J. 397, 399 (1953).
It follows from the foregoing that plaintiff is entitled to a judicial declaration of the invalidity of that part of the agreement between the Wanniers and Caplan and Fiacre which binds the former not to sell the property for the period of plaintiff's right of first refusal. Any question as to rights between the defendants inter se consequent upon this determination is left open, there having been no argument in respect thereto before us.
Reversed and remanded for further proceedings consistent with this opinion.