**In re Robert E. RIVELL and Barbara Rivell, Debtors.**

Civ. A. No. 87–2508 (AET).

United States District Court,
D. New Jersey.

Oct. 14, 1987.

Gary S. Jacobson, Kleinberg, Moroney, Masterson & Schachter, P.C., Millburn, N.J., for debtors-appellees.

David Ast, Wahl, Fox and Ast, P.C., Morristown, N.J., for appellant.

ANNE E. THOMPSON, District Judge.

This matter is before the court, pursuant to Rule 78, on appeal from an Order of the Bankruptcy Court entered on June 1, 1987. The Order requires that appellant, Olstein, abide by the terms of a financing agreement with appellees, debtors, when the former exercised a right of first refusal over a land sales contract of the latter.

Appellees own a tract of undeveloped land which they have sought to have rezoned for higher density development. In 1984 and 1985, appellees borrowed funds from Highway Development Corp. Employees Retirement Trust and Highway Development Corp. Employees Pension Trust. Olstein is a principal of Highway Development Corp. Olstein obtained an option to purchase the tract upon the occurrence of certain conditions. Debtors filed a petition for relief under Chapter 11 of the Bankruptcy Code on October 13, 1986. On February 17, 1987 a Consent Order was entered by the Bankruptcy Court which replaced Olstein's option with a right of first refusal over the property. The Consent Order provided that the debtors had discretion over the terms of any sale, subject to applicable bankruptcy law and procedure. The debtors negotiated a contract of sale of the property with InterDevelCo Hamilton, Inc. and, as required by the sales agreement, sought to have Olstein's right of first refusal removed by the Bankruptcy Court. The contract of sale contained terms providing for a payment between $2.0 and $4.8 million, depending upon the ultimate zoning density achieved for the property. The sales contract itself contained no reference to the financing arrangement at issue here and did contain a clause stating that the contract was the "complete agreement" between the parties. The debtors thereupon served upon all

creditors a "Notice of Private Sale and Proposed Financing" as required by 11 U.S.C. § 363(b)(1) and Bankruptcy Rules 2002 and 6004. This document provided notice of the contract, which was appended in its entirety, as well as notice of the hearing scheduled before the Bankruptcy Court to consider objections and to entertain higher or better offers. It also provided notice of the financing agreement at issue which had been negotiated between InterDevelCo Hamilton Inc. and debtors. The terms discussed on the Notice allowed debtors to borrow $2000 per week up to $100,000 for personal expenses, including efforts on their part to obtain the desired rezoning for higher density development. The Notice also provided that all monies advanced by the buyer would be returned if the closing did not occur; however, up to $50,000 would be forgiven if closing occurred, with the remainder credited against the purchase price.

At a hearing conducted on April 13, 1987, the bankruptcy judge considered objections to the proposed sale and financing, ruled upon debtors' petition to modify the Olstein right of first refusal, entertained higher or better offers for the property, and confirmed the sale. On April 14, 1987, Olstein exercised his right of first refusal. The debtors then moved before the Bankruptcy Court for an Order requiring Olstein to abide by the terms of the financing agreement as a term and condition of the sale approved by the Court on April 13. Following a hearing on June 1, 1987, the bankruptcy judge granted debtors' motion and Olstein filed a timely appeal from this ruling.

When Olstein exercised his right of first refusal, he elected to purchase the property upon the same terms made by the third party, InterDevelCo Hamilton, Inc. *Wellmore Builders, Inc. v. Wannier*, 49 N.J. Super. 456, 140 A.2d 422 (App.Div.1958), certif. 27 N.J. 320, 142 A.2d 710 (1958); *Socony–Vacuum Oil Company v. Pabian*, 32 N.J.Super. 390, 108 A.2d 503 (Ch.Div. 1954). The bankruptcy judge had to determine what the entire agreement entailed to which Olstein exercised his right. Pursuant to Bankruptcy Rule 2002(c)(1), debtors

presented notice of the land sales contract and financing arrangements with InterDevelCo Hamilton, Inc. in a single notice to all creditors. The hearing of April 13 addressed all aspects of the property, including the right of first refusal, the financing, and the best bid for the property. Under 11 U.S.C. § 363(e) and the Bankruptcy Rules, the Bankruptcy Court must confirm such a sale of property outside the ordinary course of business and may condition or prohibit such sale in order to protect the interests of the parties. In the April 13 hearing, the court conducted such an examination, including a bidding for other offers. The issue presented to the bankruptcy judge at the June 1, 1987 hearing was what had transpired on April 13, in particular, on what terms and conditions he had confirmed the sale of the property.

This court has examined the entire hearing transcript of April 13. Nowhere does the bankruptcy judge clearly indicate whether he is approving the financing and sales contract as one inclusive transaction. Both parties here attempt to draw inferences from the order in which he considered the issues and from excerpts of language from the transcript. In particular, both emphasize the same small excerpt when the judge considered the financing prior to entertaining higher bids.

> THE COURT: I would rather see that a purchaser knows that this is [sic.] business going to remain, if they need $100,000 to keep it going, it would seem to me that the purchaser ought to know that. That could affect the bidding as well.

Olstein contends that this sentence only refers to notice to prospective bidders that operating funds would be coming from another source. However, certainly at least as plausible a reading is that the purchaser would need to know because such funding would need to be provided as part of a "higher or better" offer. Olstein can point to nothing else in the transcript which clearly and directly indicates that it should not be read in this light.

The issue of what the bankruptcy judge intended to do on April 13 presents a

question of fact. This court will not overturn his "understanding" on June 1, reiterated on June 22, that he confirmed both the actual contract of sale and financing as components of a single transaction since it was not clearly erroneous. *Universal Minerals v. C.A. Hughes & Co.*, 669 F.2d 98 (3d Cir.1981); *In re Kimzey*, 761 F.2d 421 (7th Cir.1985). However, the bankruptcy judge apparently did not have the April 13 transcript before him. Moreover, he may have believed that more had been on the record, the actual financing agreement, for example, and that there had been more extensive and direct discussion of whether the financing was an integral part of the sale. *See* Transcript, Hearing of June 1, 1987, 13–17 to 13–25. On June 22, when the bankruptcy judge again considered the issue during Olstein's application of a stay pending appeal, he again attempted to reconstruct what had transpired on April 13 without benefit of the transcript.

> THE COURT: ... I determined that the contract included everything, did it not?
>
> MR. JACOBSON: Yes. I mean the Court determined since it was on before the Court on the same day, that it was a unified proposal.
>
> THE COURT: Yeah. I think I said at the time of the ruling. If I didn't, it certainly was part of my process. The contract encompassed a great deal more than just that.

(Transcript, Hearing of June 22, 1987, 12–16 to 12–24).

This court cannot say that the April 13 transcript conclusively demonstrates that he did not intend to confirm a unified transaction involving the property. However, due to the lack of clarity expressed in the April 13 hearing as well as the uncertainty of the June hearings, this court will remand for a reconsideration of the Order of June 1, 1987 in light of the actual April 13 hearing transcript.