243 N.J. Super. 578 (1990)
581 A.2d 85
MADISON INDUSTRIES, INC., A NEW JERSEY CORPORATION, PLAINTIFF-APPELLANT,
v.
EASTMAN KODAK COMPANY, A NEW JERSEY CORPORATION, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued February 13, 1990.
Decided April 5, 1990.
*580 Before Judges O'BRIEN, HAVEY and STERN.
*581 William J. Bigham argued the cause for appellant (Hannoch Weisman, attorneys; William J. Bigham of counsel and on the briefs with Susan Stryker).
Mark T. McMenamy argued the cause for respondent (Bressler, Amery & Ross, attorneys; Mark T. McMenamy of counsel and on the brief with Jon W. Olson).
The opinion of the court was delivered by HAVEY, J.A.D.
Plaintiff Madison Industries, Inc., appeals from an order for summary judgment dismissing its breach of contract case against defendant Eastman Kodak Company. Prior to entering the order, Judge Harding took testimony at a hearing to resolve a preliminary question as to the applicability of the "merchant's exception" under the Uniform Commercial Code, N.J.S.A. 12A:2-201(2). The judge concluded that the purported contract between the parties involved an "open-ended option" and not a "sale" as defined by the Code and therefore the "merchant's exception" did not apply. Consequently, he applied the general statute of frauds, N.J.S.A. 25:1-5, and concluded that since the "life span" of the purported agreement exceeded one year, the contract was unenforceable to the extent it had not been performed by Eastman Kodak.
On appeal, Madison argues that its contract with Eastman Kodak involved the "sale" of zinc hydroxide sludge and therefore fell within the "merchant's exception" to the Code's statute of frauds. Alternatively, it contends that the agreement was sufficiently "signed" by Eastman Kodak to satisfy the statute of frauds requirements under the Code, N.J.S.A. 12A:2-201(1) and (3)(b). It also asserts that Eastman Kodak should be estopped from raising the bar of the statute of frauds and that the trial court abused its discretion in denying Madison's motion to amend its complaint. Finally, it argues that the trial judge improperly considered oral testimony on Eastman Kodak's summary judgment motion. We reject each contention and affirm.
*582 The essential facts are not in dispute. Madison manufactures zinc salts. Eastman Kodak manufactures vitamin E at its Rochester, New York plant, using zinc to process the biologically non-active vitamin E to active vitamin E. The process generates a liquid waste stream of zinc chloride solution. Eastman Kodak converted the zinc chloride solution into zinc hydroxide sludge and, in the 1970's and early 1980's, disposed of the sludge by paying chemical waste handlers to remove it to a landfill.
In December 1981, Madison offered to purchase Eastman Kodak's zinc chloride solution for 10¢ per pound of zinc. In early 1982, the parties made an arrangement whereby Madison began removing the zinc chloride solution from Eastman Kodak's Rochester plant and transporting it to Madison's plant in Old Bridge, New Jersey, with Madison billing Eastman Kodak for the freight charges incurred by it and giving Eastman Kodak a credit for each pound of zinc it recovered from the waste solution. On February 22, 1982 Eastman Kodak forwarded a draft agreement under which it proposed that the sale and transportation arrangement continue for a one-year period, with an extension for an additional two years.
On March 5, 1982, Madison's representative, Hyman Bzura, wrote to Eastman Kodak suggesting an alternate pricing scheme based upon a concentration of zinc chloride ranging from 30% to 46%. In response, Eastman Kodak forwarded a second revised agreement on April 15, 1982 which incorporated Bzura's suggested alternate pricing scheme, changed the term of the contract from one to three years (with a provision for an automatic three-year extension), and stated that New Jersey law was to govern the agreement's interpretation. After discussing the second draft with Bzura, Dennis Zink, Eastman Kodak's sales supervisor, advised Bzura that he had to secure the formal approval of his supervisor before the agreement could be executed.
*583 In April 1982, it was determined that the zinc chloride solution had caused damage to the rubber lining of Madison's tank wagons. As a result, the parties agreed that Madison would no longer remove the liquid solution, but would only take zinc hydroxide sludge. On May 27, 1982, Madison sent a revised draft agreement to Eastman Kodak which provided for a term of five years, with an option for an additional three-year term. The agreement contained the following reference to zinc hydroxide sludge:
Madison shall have the right of first refusal to purchase any zinc hydroxide in Kodak's possession. Kodak will do its best to rid the zinc hydroxide of chlorides (in any event no higher than 5% chloride contained). The purchase price shall be a loading charge of $200.00 per dump trailer load.
On June 14, 1982, Eastman Kodak's attorney forwarded a revised draft of the agreement to Bzura which Bzura executed on September 16, 1982. However, Bzura added a sentence requiring Eastman Kodak to guarantee that its sludge would be 40% zinc, and asked Eastman Kodak officials to initial the addition. According to Madison, this sentence was a confirmation of Eastman Kodak's oral agreement regarding the purity of the sludge.
Eastman Kodak did not execute the revised draft because it knew that the waste sludge could not consistently contain 40% zinc. Although the agreement was not executed, Madison continued to receive zinc hydroxide sludge from Eastman Kodak until October 12, 1984. On that date, Eastman Kodak advised Madison that:
In light of the reduced volume of zinc hydroxide, it has been necessary to re-evaluate the present outlets of this by-product. Due to the limited amount of material it is necessary to reduce the number of our present outlets.
While service involving the pick ups of material has improved dramatically since January, I regret to inform you we have decided to discontinue supplying zinc hydroxide to your company at this time. Madison pays the lowest price per pound of zinc of any of our customers. This along with the continuing problem of a "past due account" were the major consideration [sic] in reaching this decision.
If production levels increase and the fore mentioned [sic] items can be resolved to the satisfaction of both parties, we would again look forward to supplying your company zinc hydroxide.
*584 Madison thereupon instituted the present breach of contract suit. Eastman Kodak counterclaimed charging that Madison had caused additional handling expenses because of delays and had taken unauthorized deductions. Eastman Kodak moved for summary judgment and plaintiff cross-moved seeking leave to file an amended complaint.
On the parties' cross-motions for summary judgment, Judge Harding conducted a hearing to determine the intent of the parties as to the meaning of the term "right of first refusal" under the contract draft. Hyman Bzura testified on Madison's behalf that in the metal business a "right of first refusal" meant that the buyer would purchase the metal regardless of what happened, and if the price went up and the seller could sell to a third party at a higher price, then the buyer had the right of first refusal to meet the increased price or not buy the material.
For the purpose of making his findings, Judge Harding assumed that "the letter and contract executed by Madison and returned to Kodak on September 16, 1982, confirm and embody a prior oral agreement between the parties, sufficient to comply with the terminology of N.J.S.A. 12A:2-201(2)," the "merchant's exception" to the Code's statute of frauds. That section reads as follows:
Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.
The judge recognized that in order for the "merchant's exception" to apply, the contract between the parties must be a "sale" as defined by the Code. In granting summary judgment in Eastman Kodak's favor, the judge concluded that while the term "right of first refusal" is used in the agreement, "the arrangement is more similar to an open-ended option granted to Madison." He reached this conclusion by noting that:
The expressed terms and clear meaning regarding the zinc sludge transactions required Kodak to offer Madison all the zinc hydroxide produced from that *585 plant. It is an output obligation on Kodak's part and the only way to avoid the requirement is not to have a waste stream, an unlikely contingency. But according to the contract, Madison had no obligation to buy. It merely had a first right to purchase the output at $200. per load.
The judge rejected the testimony of Madison's witnesses at the hearing, first because the contract provided that it could not be supplemented or modified by testimony as to usage of the trade, and second, because even if the Code applied, the clear and unambiguous language of the agreement precluded parol evidence as to its meaning. See N.J.S.A. 12A:1-205(4). He concluded that since an "option" is not a "sale" under the Code, the "merchant's exception" did not apply and thus the agreement was governed and barred by the statute of frauds, N.J.S.A. 25:1-5. He therefore dismissed Madison's complaint and granted summary judgment on Eastman Kodak's counterclaim in the amount of $818.10. He also denied Madison's motion to file an amended complaint.
Preliminarily, we find no error in Judge Harding having conducted a fact-finding hearing prior to the summary judgment motion. The fact finding was essential to resolve the legal question of whether the "merchant's exception" applied to the transaction. Ultimately, the judge was required to determine whether the contract was for the "sale" of goods under the Code. To make that determination, he chose to explore the intent of the parties, at Madison's request, in their use of the term "right of first refusal." We agree with the judge's observation that the hearing was akin to that conducted under Lopez v. Swyer, 62 N.J. 267, 275-276, 300 A.2d 563 (1973), where the court addressed the question whether the discovery rule requires relief from the statute of limitations in a personal injury case. In any event, even if conducting the hearing was error, it was clearly harmless since the judge excluded the testimony and decided the legal issues based solely on the uncontradicted facts before him.
Madison argues that the "uncontroverted testimony" and summary judgment proofs establish that the "right of first *586 refusal" constituted a "sale" under the Code. It therefore reasons that since Eastman Kodak made no objection to the agreement within ten days after its receipt, it was an enforceable agreement under the "merchant's exception." See N.J.S.A. 12A:2-201(2).
N.J.S.A. 12A:2-106(1) defines "sale" as follows:
In this Chapter unless the context otherwise requires "contract" and "agreement" are limited to those relating to the present or future sale of goods. "Contract for sale" includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price (12A:2-401). A "present sale" means a sale which is accomplished by the making of the contract.
Clearly, a "sale" involves "the passing of title from the seller to the buyer for a price[.]" Ibid, [emphasis added]. This may be accomplished by both a "present sale of goods," or by a "contract to sell goods at a future time." Ibid. In either case, the transaction contemplates a transfer of property from one person to another for a consideration of value, without reference to the mode by which the consideration is payable. See State v. Weissman, 73 N.J. Super. 274, 281, 179 A.2d 748 (App.Div.), certif. den. 37 N.J. 521, 181 A.2d 782 (1962). Simply stated, a "sale" under the Code is a transfer of title to goods for consideration. Amer. Container Corp. v. Hanley Trucking Corp., 111 N.J. Super. 322, 328, 268 A.2d 313 (Ch.Div. 1970). Implicit is the unconditional obligations of the seller to pass title, and of the buyer to pay a valuable consideration therefor. See N.J.S.A. 12A:2-301 ("[t]he obligation of the seller is to transfer and deliver and that of the buyer is to accept and pay in accordance with the contract").
Whether the pertinent term in the contract here is a "right of first refusal," as the plain language suggests, or an "open-ended option" to purchase, as found by Judge Harding, the transaction cannot be deemed a "sale" of goods. A privilege of first refusal does not give the holder of the privilege the power to compel the owner to sell. It merely requires the owner, if and when he decides to sell, to offer the property to *587 the holder at a stipulated price. Wellmore Builders, Inc. v. Wannier, 49 N.J. Super. 456, 464, 140 A.2d 422 (App.Div.), certif. granted 27 N.J. 320, 142 A.2d 710 (1958); and see Mazzeo v. Kartman, 234 N.J. Super. 223, 229, 560 A.2d 733 (App.Div. 1989). Conversely, the holder is not compelled to buy at the designated or other price. Wellmore, supra, 49 N.J. Super. at 464, 140 A.2d 422. Madison at best had a right to purchase all the zinc hydroxide sludge Eastman Kodak processed and tendered for sale. Eastman Kodak, however, had no unconditional obligation to sell the sludge, or even to process it. Indeed, Eastman Kodak had the right not to sell the sludge at all, and dispose of it by some other environmentally acceptable method. Nor did Madison have an unconditional obligation to buy all of the sludge Eastman Kodak tendered. Madison simply could have declined to buy all or part of the by-product for whatever reason. Clearly, the requisite elements of a "sale" are absent.
The same is true if we deem the clause as being an "open-ended option." An option is a binding unilateral contract whereby the owner offers to sell to the optionee at a specified price in the event the latter exercises the option, whether the owner is willing to part with ownership or not. See State v. N.J. Zinc Co., 40 N.J. 560, 576, 193 A.2d 244 (1963); Wellmore, supra, 49 N.J. Super. at 464, 140 A.2d 422. The option is unilateral because the owner is bound by his offer, but no obligation is imposed upon the optionee. State v. N.J. Zinc Co., supra, 40 N.J. at 576, 193 A.2d 244. Plainly the clause here is not a "sale" because no bilateral obligation is created to compel Madison to purchase the sludge tendered by Eastman Kodak at a designated price.
In deciding whether the transaction involved a "sale" of goods, Judge Harding properly rejected the parol evidence presented by Madison. A court may exclude parol evidence as to the meaning of a term if it finds that the parties intended the writing to be a "complete and exclusive statement of the terms *588 of the agreement[.]" See White & Summers, 1 Uniform Commercial Code, § 2-9 at 104 (3rd Ed. 1988) [emphasis in original].
The purported agreement here stated that:
No terms, conditions, prior course of dealings, course of performance, usage of trade, understandings, purchase orders, or agreement purporting to modify, vary, supplement or explain any provision of this Agreement shall be effective unless in writing, signed by representatives of both parties authorized to amend this Agreement. [Emphasis added].
Absent written acquiescence by Eastman Kodak, this clause barred Madison from modifying or explaining the terms of the purported agreement by parol evidence as to usage of the trade. Further, even if the Code applied, the parol evidence must be excluded since it was incompatible with the express terms of the agreement. See N.J.S.A. 12A:1-205(4).
Since the transaction did not involve a "sale" of goods, the "merchant's exception" under N.J.S.A. 12A:2-201(2) does not apply. Therefore, the purported agreement is unenforceable under the general statute of frauds, N.J.S.A. 25:1-5, since it was not to be performed within one year from the making thereof.
We agree with Eastman Kodak that even if the transaction here involved a "sale," Madison failed as a matter of law to satisfy the requisites of the "merchant's exception." N.J.S.A. 12A:2-201(2) contemplates a "writing in confirmation of the contract[.]" [Emphasis added]. Hence, the section presupposes that an underlying oral agreement for the sale of goods had been reached by the parties. Stated differently, the writing which is enforceable against the party who receives it and does not object to it within ten days, must "confirm" a previously concluded agreement as to all essential terms of the sale.
Here, Madison sent the signed contract draft back to Eastman Kodak on September 16, 1982 with an added sentence indicating that the zinc hydroxide must have a minimum content of 40%, and requested that Eastman Kodak initial the change when it executed the contract. In sending the revised contract back to Eastman Kodak, Madison made no reference to *589 a previously concluded contract, or to a prior approval by Eastman Kodak of the added clause regarding 40% minimum content. Further, this proposed agreement, as amended, was never presented to Eastman Kodak's supervisor who, according to the record, was the only officer with authority to execute it. Because an essential term of the agreement was never agreed to by Eastman Kodak, the predicate "contract" which is "confirmed" in writing under N.J.S.A. 12A:2-201(2) was never reached. Therefore, the "merchant's exception" would not apply.
We have considered Madison's other contentions and find them without merit. R. 2:11-3(e)(1)(E). We add only that Judge Harding properly rejected Madison's argument that the requisite "writing" under N.J.S.A. 12A:2-201(1) was satisfied by Eastman Kodak's reference in its correspondence to the "signed hydroxide contract." As the judge pointed out, the correspondence was not an admission, but simply acknowledged receipt of Madison's signed contract. Indeed, Eastman Kodak wrote to Madison on September 22, 1982 stating:
Also, we have just received your copy of the signed zinc hydroxide contract and we will be taking it up with DPI management in the very near future. [Emphasis added].
Further, there is no basis to conclude that Eastman Kodak admitted that a contract was made in its "pleading, testimony, or otherwise in court." N.J.S.A. 12A:2-201(3)(b). Finally, Madison has failed to satisfy the factual elements for a prima facie case of promissory estoppel. See Royal Associates v. Concannon, 200 N.J. Super. 84, 91-92, 490 A.2d 357 (App.Div. 1985).
Affirmed.