**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3637-19

ORIAN JOHNSON,

    Plaintiff-Appellant,

v.

US BANK, NA, and RARITAN
VALLEY TITLE EXAMINERS,
LLC,

    Defendants,

and

PAULINE RYCYK, COLDWELL
BANKER, INC., JOHN
QUATTRO,[1] and RAM
MORTGAGE PARTNERS, LLC,

    Defendants-Respondents.

_____

Submitted May 4, 2021 – Decided June 29, 2021

Before Judges Fisher and Gilson.

---

[1] Improperly pled as John Quahro.

On appeal from the Superior Court of New Jersey, Chancery Division, Somerset County, Docket No. C-012082-19.

Orion Johnson, appellant pro se (Thomas D. Williamson, on the briefs).

Saul Ewing Arnstein & Lehr, LLP, attorneys for respondents Pauline Rycyk and Coldwell Banker, Inc. (Francis Riley, Colleen Fox, and Rebecca Starner, on the brief).

PER CURIAM

In this appeal, we consider whether an option to purchase and a right of first refusal contained within a lease agreement remain enforceable once the lease term expires. Because we hold they do not, the separate orders that summarily dismissed the tortious interference claims must be affirmed because plaintiff did not possess those contractual rights when the alleged acts of interference occurred.

The facts are somewhat convoluted. But those facts that are disputed or unclear are not relevant and those that are relevant are undisputed. On December 15, 2015, plaintiff Orian Johnson entered into an agreement with Zoltan and Nagyezsda Kiss[2] to lease – for a two-year term expressly ending on

_____

[2] We note that Nagyezsda Kiss alone signed the lease agreement. In light of our disposition of this appeal, we need not consider the significance of only one of

2                                                                      A-3637-19

December 14, 2017 – property they then owned in Belle Mead.  The agreement not only leased the property to Johnson at the rate of $2,000 per month "for a total lease payment of $48,000," but it also conveyed to Johnson: (1) the option to purchase the property for $500,000 "provided" Johnson "timely execut[ed] . . . the option" no later than "90 days prior to the expiration of the [l]ease term"; and (2) a right of first refusal to match a bona fide offer to purchase the real property "during the [l]ease [t]erm."

When Johnson and the owners entered into this agreement, a foreclosure action brought by U.S. Bank National Association, which held a mortgage on the property, was pending against the owners; indeed, it may be that a judgment of foreclosure had already been entered by that time.[3]  U.S. Bank became the owner after successfully bidding at a September 6, 2016 sheriff's sale.  The sheriff deeded the property to U.S. Bank on March 29, 2017.

---

the two owners having signed the agreement.  See Lobiondo v. O'Callaghan, 357 N.J. Super. 488 (App. Div. 2003).  We assume for present purposes only that both Nagyezsda and Zoltan (hereafter "the owner" or "the prior owner") were bound by this agreement.

[3] The record on appeal lacks a copy of the foreclosure judgment or a clear indication of when it was entered but references in other materials in the appendix suggest the judgment was entered in October 2014, before the lease agreement came into existence.

Johnson claims he thereafter timely paid U.S. Bank the rent required by his lease agreement with the prior owner. Although the record suggests this may not be so, or at least presents a dispute about whether rent was timely paid in late December 2016 through the spring of 2017,[4] we assume – because the claims in question were summarily adjudicated – that Johnson's claim that he timely paid rent is true. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995).

Johnson asserted that, in April 2017, he communicated with a sales agent working for U.S. Bank about his "interest[] in exercising [his] right to purchase."[5] Johnson also asserted that he "secured a [m]ortgage [c]ommitment and contacted [U.S.] Bank about buying the property." About this time, Johnson forwarded U.S. Bank's sales agent a contract, which bears Johnson's signature, a June 18, 2017 date, and a purchase price of $437,500.[6] His offer was not based

_____

[4] The record contains a copy of a complaint filed by U.S. Bank on May 15, 2017, that alleged Johnson's failure to pay rent from December 2016 to April 2017. The action was soon after dismissed for reasons not revealed.

[5] In a certification, Johnson alleged he communicated his desire to purchase the property with another sales agent in 2016, but he has not alleged he exercised the option in the manner required by his agreement with the prior owner.

[6] The record on appeal contains a copy of this proposed contract which states that the total purchase price is $437,500, of which $22,000 was then paid, and another $22,000 would be paid on or before closing. It is not clear whether the

on the terms of the option to purchase but on the price for which the property had been listed for sale by its new owner. Later, Johnson obtained approval for a loan in a greater amount and forwarded a revised contract to purchase for $500,000 on January 5, 2018. He received no response.

Instead, in 2019, U.S. Bank retained defendant Pauline Rycyk, a sales associate with defendant Coldwell Bank Real Estate Services, LLC, to assist with the sale of the property. On May 17, 2019, the property was purchased by defendant RAM Mortgage Partners for $370,000.

In December 2019, Johnson filed his complaint in this action against U.S. Bank and Raritan Valley Title Examiners, as well as defendants Rycyk, Coldwell Bank, RAM, and John Quattro, an alleged principal of RAM. Johnson alleged, among other things, that: U.S. Bank breached the terms of his agreement with the prior owner when selling the property to RAM; Rycyk tortiously interfered with Johnson's contractual rights; Coldwell Bank failed to properly supervise Rycyk by not stopping her alleged tortious interference; and RAM and Quattro tortiously interfered with Johnson's contract rights. The

---

first $22,000 was presented to the sales agent at that time or whether that $22,000 ostensibly represented credits to which Johnson believed he was entitled. See n.8, below.

A-3637-19

claims against Rycyk, Coldwell Bank, RAM, and Quattro were summarily dismissed.[7]

Johnson's appeal of the disposition of his claims against those four defendants requires an examination of the contractual rights Johnson retained, if any, when Rycyk brokered the sale and when RAM purchased the property. In other words, the linchpin to Johnson's arguments turns on whether he retained either his option to purchase or his right of first refusal after the two-year lease term expired. We conclude that by the time Rycyk, Coldwell Bank, RAM, and Quattro became involved Johnson's relationship to the property was only as a holdover tenant and both the option and the right of first refusal expired when the lease term expired on December 14, 2017.[8]

The option to purchase required, among other things, that Johnson "deliver to the Landlord, a written notice of [his] intent to purchase, not less than 90 days prior to the expiration of the Lease Term" (emphasis added).

---

[7] After this appeal was listed on a plenary calendar, we inquired about the status of Johnson's claims against defendants U.S. Bank and Raritan Valley. The parties' responses advised the claims were unadjudicated, causing our remand for the limited purpose of their disposition. The trial court has since dismissed those claims for lack of prosecution by orders entered on April 23, 2021, and May 28, 2021.

[8] The option to purchase and the right of first refusal were arguably extinguished by the foreclosure judgment, but we need not decide that question.

"Lease Term" is unambiguously defined by the agreement as "begin[ning] on December 15, 2015[,] and . . . terminat[ing] on December 14, 2017." This same provision also repeats Johnson's obligation to exercise the option "by such time and date," clearly referring to December 14, 2017. The agreement contained no provision for an extension of the lease term, and so, by the agreement's express terms, the option to purchase terminated on December 14, 2017. See Andreula v. Slovak Gymnastic Union Sokol Assembly No. 233, 140 N.J. Eq. 171, 174 (E. & A. 1947) (holding that "[a]n option to purchase contained in a written lease cannot be exercised after the expiration of the written lease by a tenant holding over since [the option] is a collateral contract, independent of the lease"); Wolk v. Widlansky, 142 N.J. Eq. 165, 167 (Ch. 1948) (same), aff'd o.b., 1 N.J. 491 (1949); see also Sheild v. Welch, 4 N.J. 563, 569 (1950) (reaching the same conclusion as to a broker's claim to a commission once the tenancy ended despite the tenant's continued presence on the property as a holdover tenant).

The only evidence of an offer prior to December 14, 2017, was Johnson's alleged offer during the Spring of 2017 to purchase the property from U.S. Bank but for less than the $500,000[9] expressly called for in the agreement. This offer

---

[9] Johnson's April 2017 offer to purchase was for $437,500. The contractual provision that created Johnson's option to purchase required an offer of

was not, as the law requires, "in strict accordance" with the option's terms. <u>State by Adams v. N.J. Zinc Co.</u>, 40 N.J. 560, 576 (1963); <u>see also</u> <u>Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.</u>, 182 N.J. 210, 223 (2005). Johnson did not convey an offer for at least $500,000, until January 5, 2018, by which time the right to exercise the option had expired.[10]

We conclude that because Johnson failed to strictly comply with the option prior to its termination, Johnson no longer possessed that contractual right when defendants became involved with the property and when they allegedly acted tortiously.

Our consideration of Johnson's right of first refusal leads to the same result. This right, also known as a right of preemption, is often confused with an option to purchase but, as we have explained, they are materially different:

> An ordinary option gives the optionee the power to compel the owner of the property to sell it at a stipulated price, whether he be willing to part with ownership or not. On the other hand, a privilege of first

$500,000 less only a $500 credit for every month's rent, and another credit of $5,000. Even allowing for these credits, the $437,000 offer to purchase was in an amount far less than the minimum required by the option-to-purchase clause.

[10] In keeping with the obligations imposed by <u>Brill</u>, we assume – without deciding – that the manner in which the offer to purchase for $500,000 was conveyed strictly met with the option's terms and that Johnson's right to exercise the option had not been extinguished by law or in equity by his earlier inadequate offer to purchase.

refusal or preemption does not give the pre-emptioner the power to compel the owner to sell; it merely requires the owner, when and if he decides to sell, to offer the property first to the person entitled to the preemption, at the stipulated price, and the pre-emptioner may then elect whether he will buy.

[Wellmore Builders, Inc. v. Wannier, 49 N.J. Super. 456, 464 (App. Div. 1958); see also Madison Indus., Inc. v. Eastman Kodak Co., 243 N.J. Super. 578, 586-87 (App. Div. 1990); Mazzeo v. Kartman, 234 N.J. Super. 223, 229-30 (App. Div. 1989).]

Like an option to purchase, the right of first refusal – when contained in a lease agreement – is a collateral and independent agreement governed by its own terms. One of those terms unambiguously linked the life of the right of first refusal to the life of the two-year lease term.

Courts must construe these agreements in a way that "accord[s] with justice and common sense and the probable intention of the parties." Clark v. State St. Tr. Co., 169 N.E. 897, 903 (Mass. 1930) (quoted with approval in Krosnowski v. Krosnowski, 22 N.J. 376, 387 (1956) and Wellmore Builders, Inc., 49 N.J. Super. at 466). Johnson's right of first refusal required the prior owner to give him written notice within ten days of a "third-party offer to purchase the premises"; upon receiving such a notice, Johnson would have thirty days to give the prior owner "written notice . . . of his intent to negotiate an agreement to match [the] offer or exercise the Option to Purchase herein."

9

Unlike the option to purchase, which could only be put in motion by Johnson – as the possessor of the option – the first step in the right-of-first-refusal process was to be taken by the property owner. Wellmore Builders, Inc., 49 N.J. Super. at 464. In adhering to the Brill standard, we assume that when U.S. Bank first received an offer to purchase, it did not give notice of that fact to Johnson. Nevertheless, that alleged failure is of no moment, since – like the option to purchase – Johnson's right of first refusal did not survive beyond December 14, 2017. The agreement expressly and unambiguously contained the parties' stipulation that Johnson only had the right "to match any bona fide offer to purchase the real property during the Lease Term" (emphasis added). We view this emphasized term in the same way we view the limited duration of the option to purchase and conclude that it was extinguished when the two-year lease term expired on December 14, 2017. There is no evidence in the record that either the prior owner or U.S. Bank ever received an offer to purchase from a third-party on or before December 14, 2017. Once that day ended, Johnson had no right of first refusal with which these defendants could have tortiously interfered.

For these reasons, we affirm the dismissal of Johnson's claims against Rycyk, Coldwell Bank, RAM, and Quattro. We find insufficient merit in any

other argument that might be discerned from Johnson's submissions to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

11